**BLACKBURN, NICKELS & SMITH, INC., Appellant,**

v.

**Lance G. ERICKSON, an individual, et al., Respondents.**

**No. C9-84-1639.**

Court of Appeals of Minnesota.

April 23, 1985.

Review Denied June 24, 1985.

Jerry W. Snider, Elizabeth L. Taylor, Faegre & Benson, Minneapolis, for appellant.

James F. Roegge, Meagher, Geer, Markham, Anderson, Adamson, Flaksamp & Brennan, Minneapolis, for respondents.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

RANDALL, Judge.

Blackburn, Nickels & Smith, Inc. ("BNS") brought this action against Lance Erickson, its former president, Merwyn Larsen, a former key employee, and Erickson-Larsen, Inc., a corporation Erickson and Larsen formed which competed against BNS. It alleged misappropriation of customer data, breach of fiduciary duty to BNS, unfair competition, and wrongful interference with contracts between BNS and its customers. Erickson counterclaimed for breach of employment contract. Summary judgment for Erickson was ordered on the counterclaim. That judgment was appealed to the supreme court, which remanded for trial of the main action on the merits, ordered that proceedings in connection with the appeal be stayed, and forbade Erickson to levy upon his judgment.

After trial on the merits of the main action, the jury returned a verdict in favor of the defendants. BNS's motion for judgment n.o.v. or for a new trial was denied, and judgment was entered dismissing the complaint. BNS appealed. The supreme court issued an order transferring the first appeal to this court. We hereby consolidate the two appeals, and affirm.

## FACTS

BNS is a managing general insurance agency. Erickson, a longtime employee of BNS, became its president under an employment contract dated September 14, 1978. The contract was for a two year term, and provided, in addition to a monthly salary, the payment of "additional incentive payments" of $20,000 on September 14, 1978, $10,000 on October 15, 1978, and $14,000 on September 1, 1979, September 1, 1980, September 1, 1981, September 1, 1982, and September 1, 1983. The contract also contained a prohibition against engaging in other business activity during its term, a prohibition against disclosing BNS customer lists, either during or after the term of employment, to any other person or entity, and a covenant not to compete during the term of employment. The contract provided that if Erickson resigned from the company without cause he would forfeit his right to receive any of the unpaid "additional incentive payments."

Erickson terminated his employment with BNS on December 15, 1980, twenty-seven months after starting. He testified that although his official termination date was December 15, his replacement began working on December 1st. He testified that he was told that as of December 1st he was no longer needed in the office. Using either December 1st or December 15th as his last date, it is not in dispute that he worked slightly longer than his initial two-year contract.

Merwyn Larsen, a BNS vice-president and key employee, terminated his employment with BNS on November 30, 1980. Together they formed Erickson-Larsen, Inc., a managing general insurance agency which competes with BNS. Even before their employment with BNS terminated, however, both Erickson and Larsen enrolled BNS clients for their new agency. They assert that they did no soliciting for their new agency, but that some BNS clients, dissatisfied with procedures at BNS, asked to transfer their business. Testimony showed that it was "common knowledge" locally that Erickson and Larsen were planning to leave BNS and start their new agency. In addition, Erickson and Larsen arranged for office space, telephone service, and office supplies for their new business while still employed by BNS.

BNS did not pay Erickson the 1981, 1982, and 1983 payments required by its contract with him. The district court found that the contract required those payments, since Erickson did not resign before the end of the effective two-year term of the contract.

At trial, Larsen testified that he did not think BNS had been harmed by his and Erickson's actions. BNS objected on grounds that Larsen was speculating and had no personal knowledge, but the trial court overruled the objection. BNS contends that ruling was reversible error. At trial, representatives of several companies which transferred their insurance accounts from BNS to Erickson-Larsen testified that they would have taken their business from BNS even if Erickson and Larsen had not left BNS and solicited their business.

By special verdict, a jury found that Erickson, Larsen, and Erickson-Larsen, Inc., had not unfairly competed with BNS, had not wrongly interfered with BNS's customer relations, and had not breached any fiduciary duty owed to BNS. The court adopted the special verdict as its findings of fact and dismissed BNS's complaint with prejudice.

## ISSUES

I. Did the trial court err in granting Erickson's motion for summary judgment on his counterclaim for unpaid incentive payments?

II. Did the trial court err in denying BNS's motion for judgment n.o.v. or for a new trial?

III. Did the trial court err in allowing Larsen to testify that he thought BNS sustained no losses as a result of the transfer of accounts to Erickson-Larsen?

## ANALYSIS

### I

*Counterclaim:*

BNS contends summary judgment on the counterclaim was inappropriate because there existed a genuine issue of material fact as to the construction of Erickson's employment agreement. BNS argued that there was a real dispute whether the agreement was limited to two years or continued past the two year date. BNS also claimed that Erickson breached the employment agreement and thus discharged BNS from

further performance. Erickson contends that the agreement was effective for only two years, and thus his resignation after the two years were up could not defeat his claim to the incentive pay. Alternatively, Erickson argues that even if there was any issue of material fact unresolved at the time the partial summary judgment was entered, the jury's later verdict in the main action was dispositive since the jury determined there was no breach of Erickson's duty toward BNS. Erickson's alternative claim is without merit. The jury's verdict was *not* dispositive of BNS's claim that Erickson breached his employment agreement. The jury determined that Erickson had not breached any fiduciary duty, had not unfairly competed, and had not interfered with contractual relations between BNS and its clients. The jury did *not* determine that Erickson had not breached his contract. Erickson's first claim, however, has merit.

 In granting summary judgment on the counterclaim, the district court found no ambiguity in the contract. It found that BNS had bargained for two years of Erickson's services, had received two years of Erickson's services, and Erickson was therefore entitled to the additional compensation he had been promised if he performed for two full years. Whether the terms of a contract are ambiguous is a question of law to be determined by the court. *Noreen v. Park Construction Co.*, 255 Minn. 187, 96 N.W.2d 33 (1959). If no ambiguity exists, interpretation of the contract and its legal effect are questions of law for the court, *Bell Lumber Co. v. Seaman*, 136 Minn. 106, 161 N.W. 383 (1917), but where the language is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact for the jury unless such evidence is conclusive. *Employers Liability Assurance Corp. v. Morse*, 261 Minn. 259, 111 N.W.2d 620 (1961). On appeal, a reviewing court may make a determination of whether a contract is ambiguous without deference to the trial court's determination.

A contract is ambiguous if it is reasonably susceptible to more than one construction. *Id.* Erickson's employment agreement states on its face that it is for two years. Taken by itself, that provision is unambiguous. The alleged ambiguity enters only upon BNS's assertion that paragraph 13 of the agreement, (providing that Erickson may terminate his employment upon sixty days notice but BNS is not thereafter obligated to make the additional payments to him,) continued in effect even *after* the agreement by its own terms expired. Such an assertion is not supported by the actual language of the contract. The contract, when read as a whole, provides that if Erickson stayed for the entire two years, he would be entitled to the additional incentive payments, but if he left without cause *before* the two years were up, he would not be. Erickson did not resign until more than two years after the contract's effective date, and was thus entitled to all payments promised him.

Erickson attempts to argue in support of the summary judgment by telling the story behind the additional payments (that they were agreed to by the previous owner of BNS and that the new owners of BNS received a reduction in purchase price so they would make the payments to Erickson). Rather than bolstering his position that summary judgment on the counterclaim was appropriate, this argument would require that the counterclaim be heard by a jury, since BNS disputes his story. *See, Matter of Turners Crossroad Development Co.,* 277 N.W.2d 364 (Minn. 1979); *Donnay v. Boulware,* 275 Minn. 37, 144 N.W.2d 711 (1966). Since we find that the employment contract was not ambiguous, we do not base our affirmance upon the extrinsic facts Erickson sets forth in his brief.

## II

*Sufficiency of evidence to support verdict:*

BNS next contends that the evidence was insufficient to support the jury verdict of no breach of fiduciary duty and no tortious interference with the contractual relations between BNS and its customers. BNS argues that the jury verdict of no breach cannot stand given the "admissions" by respondents that they solicited BNS's customers while still in BNS's employ. BNS argues the trial court should therefore have granted its motion for judgment n.o.v. Respondents deny that they solicited customers for their new agency while still employed by BNS. They maintain that the only two clients to enroll with their new agency before December 1st were AFC and Jenkins Lines, and that those two clients did so without any solicitation and only after they volunteered to respondents they were unhappy with BNS and wanted to change agencies.

The trial lasted six days. The jury's special verdict was clear but not unanimous—one juror answered "yes" to each of the interrogatories. The trial court denied appellant's motion for judgment notwithstanding the verdict. "On an appeal such as this we review the entire evidence before the trial court to determine whether there is any competent evidence reasonably tending to sustain the verdict. Unless the evidence is practically conclusive against the verdict, we will not set the verdict aside." *Sandhofer v. Abbott-Northwestern Hospital,* 283 N.W.2d 362, 365 (Minn. 1979). We must view the evidence in the light most favorable to the prevailing party, and can overturn a jury verdict only when it is manifestly contrary to the evidence, and review is limited even further because the jury has considered the demeanor of the witnesses. *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 155 (Minn. 1982) (citing *Steumpges v. Parke, Davis & Co.,* 297 N.W.2d 252, 256 (Minn.1980)).

The jury in this case believed Erickson and Larsen when they testified that they did not solicit any of BNS's customers until after they had left BNS. They did admit enrolling AFC and Jenkins as customers before that time, but testified that they only did so after AFC and Jenkins made it clear that they would not re-enroll with BNS anyway. All other acts which BNS

claims constituted breaches of fiduciary duty were denied by respondents, and, for purposes of review, respondents must be believed.

■■■ As officers of BNS, Erickson and Larsen owed BNS a higher duty than had they been mere employees. If an employee cannot "feather his own nest at the expense of his employer while he is still on the payroll," *Sanitary Farm Dairies, Inc. v. Wolf,* 261 Minn. 166, 112 N.W.2d 42 (1961), officers have an affirmative duty to act in the employer-corporation's best interest and to actively promote the interests of the corporation to the exclusion of their own self-interest. Even taking Erickson and Larsen's version of the transactions with AFC and Jenkins as the truth, it does not seem as though they were promoting BNS's best interests throughout. However, given our scope of review and the deference to the jury as sole judges of credibility and finders of fact, we cannot say, as a matter of law, that the jury's verdict was unsupported by the evidence.

As for the claim of unfair competition, BNS's customer list which respondents allegedly misappropriated was not a trade secret or otherwise deserving of protection. It could be easily duplicated from public sources. Customers of BNS and Erickson-Larsen are independent insurance agents, a limited group easily identified, and whose identity is not protected. The supreme court held in *Boone v. Krieg,* 156 Minn. 83, 194 N.W. 92 (1923), that the solicitation of former customers might seem unfair and unjust, but the employer has no exclusive right to the continued patronage of customers, and employees have the right to better themselves in new businesses. *See also Sanitary Farm Dairies,* 261 Minn. at 169, 112 N.W.2d at 45 ("[I]f an employee has built up patronage either on a specific * * route, or among geographically unrelated prospects, he may share with the employer the right to solicit and enjoy the fruits of his labors after the termination of his employment.").

The jury's finding that respondents did not wrongfully interfere with contractual relations between BNS and its customers also cannot be disturbed. The contracts between BNS and the customers that followed Erickson and Larsen were about to expire on their own terms. The record supports the jury's conclusion that respondents neither urged customers to breach contracts in effect nor improperly urged customers not to renew expiring contracts.

## III

*Larsen's opinion testimony:*

■■ Finally, BNS claims that allowing Larsen to testify that BNS was not harmed by the formation of the new agency because the clients that left BNS for Erickson-Larsen would have left anyway constituted reversible error. It argues that the question whether BNS was harmed by respondents' breach of fiduciary duty is legally irrelevant to the question of damages, since the corporation is entitled to any profits the fiduciary reaped by the breach regardless of whether the corporation suffered any harm. *Tarnowski v. Resop,* 263 Minn. 33, 51 N.W.2d 801 (1952). However, the question whether BNS customers would have left BNS even if Erickson and Larsen had not formed a new agency *is* relevant to the question of whether Erickson and Larsen solicited BNS accounts before leaving BNS. Thus, it is not clear that admission of Larsen's testimony was error, much less reversible error. *See* Minn.R.Evid. 701, 704. Further, it should be noted that the jury knew Larsen was neither an expert nor in any way impartial. The jury was aware that Larsen was trying to *prove* BNS was not unfairly harmed, was testifying on his own behalf to avoid having to pay money damages, and the jury could give Larsen's statement whatever weight it felt the statement deserved.

## DECISION

Erickson's employment contract with BNS was unambiguous, and summary judgment for Erickson on his counterclaim for compensation was therefore appropri-

ate. The trial court did not err in refusing to grant BNS's motion for judgment n.o.v. or in allowing Larsen to testify that, in his opinion, BNS was not harmed.

Affirmed.