**CITY OF VIRGINIA, Respondent,**

v.

**NORTHLAND OFFICE PROPERTIES LIMITED PARTNERSHIP, et al., Appellants.**

**No. C3–90–1581.**

Court of Appeals of Minnesota.

Jan. 29, 1991.

Review Denied April 18, 1991.

James J. Thomson, Holmes & Graven, Minneapolis, for respondent.

Frederick A. Dudderar, Jr., Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, for appellants.

Considered and decided by KALITOWSKI, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

SCHUMACHER, Judge.

Respondent commenced this action to enforce a development agreement between it and appellants. Both parties moved for summary judgment and the trial court granted summary judgment for respondent.

## FACTS

This case concerns the interpretation of section 10 of an agreement titled "Land Disposition Agreement and Contract Guaranteeing Development" (development agreement). Section 10 of the agreement provides:

### CITY FINANCING

It is acknowledged by Developer and City that City is acquiring its funds *for the purpose of obtaining the lands to be conveyed to Developer and for its other expenses*, through the use of tax increment bonds, repayment of which shall be supported by the pledge of increased tax revenues realized from Development District No. 2. It is contemplated by the parties to this Agreement that the real property taxes produced from the Property, including the lands and Improvements, after Developer completes reconstruction of the Improvements, shall not be less than the amounts indicated under the "Northland" revenue column on the attached schedule (Exhibit "B") per year, commencing with the first year in which the Improvements are taxed at their full value. Developer agrees, for itself, its successors and assigns, that if at any time *during the period of repayment* of *the* tax increment bonds issued by the City the real property taxes on the Property, including the lands and Improvements, are less than as indicated under the "Northland" revenue column of attached schedule (Exhibit "B"), Developer shall pay to City the difference between the real property taxes payable and the amount indicated on Exhibit "B" for that year.

(Emphasis added).

In 1982, appellants remodeled some property in the City of Virginia. Respondent, the City of Virginia, assisted appellants by acquiring the land and providing financial assistance. The City obtained the money for land acquisition and other expenses by issuing tax increment financing (TIF) bonds. The parties planned that the bonds would be repaid from the increased property taxes collected on property in the devel-

opment district in which the property remodeled by appellants is located.

Repayment of the bonds is also supported by appellants' agreement to pay the City the difference between the real property taxes payable on property within the district and an amount agreed upon by the City and appellants. The agreed upon amount is $106,990 per year for the years 1989 through 2002. The agreement provides that appellants' obligation to make deficiency payments continues "during the period of repayment of the tax increment bonds." The obligation will end no later than the year 2002 since the schedule of agreed upon amounts ends with that year.

General obligation tax increment financing bonds in the amount of $950,000 were issued in 1982. The interest rate on those bonds was approximately 12.66%. Section 7 of the City's resolution authorizing the bond issue provided:

> *Defeasance. When any Bond* and all coupons appertaining thereto *have been discharged as provided in this Section,* all pledges, covenants and other rights granted by this Resolution to the holders of such Bond and coupons shall cease, and *such Bond* and coupons *shall no longer be deemed to be outstanding under this Resolution.* The City may discharge its obligations with respect to any Bond and the coupons appertaining thereto which are due on any date by depositing with the paying agent on or before that date a sum sufficient for the payment thereof in full; or, if any Bond or coupon should not be paid when due, it may nevertheless be discharged by depositing with the paying agent a sum sufficient for the payment thereof in full with interest accrued to the date of such deposit. The City may also discharge its obligations with respect to any prepayable Bonds according to their terms, by depositing with the paying agent on or before that date an amount equal to the principal and interest which are then due, provided that notice of such redemption has been duly given as provided herein. *The City may also at any time discharge its obligations with respect to any Bonds,* subject to the provisions of

law now or hereafter authorizing and regulating such action, *by depositing irrevocably in escrow,* with a bank qualified by law as an escrow agent for this purpose, *cash or securities* which are authorized by law to be so deposited, bearing interest payable at such time and at such rates and maturing on such dates *as shall be required to pay all principal and interest to become due thereon to maturity or said redemption date.*

(Emphasis added).

The 1982 bonds mature periodically, with the last maturing in 2002. The 1982 bonds are callable, with the earliest call date being April 1, 1992.

By 1983, interest rates had decreased. The City, therefore, issued $1,025,000 in general obligation advance refunding TIF bonds. These bonds have an interest rate of 9.53%. The proceeds from the 1983 bond issue were placed in escrow for payment of the 1982 bonds and the 1982 bonds' call provision was invoked.

By 1989, interest rates had again fallen and the City repeated the process of refinancing that it followed in 1983. $985,000 in refunding bonds yielding 7.48% were issued in 1989. The proceeds were placed in an escrow account for payment of the 1983 bonds.

Real property taxes payable for the years 1989 and 1990 were less than the amount guaranteed by appellants. The City, therefore, requested that appellants make their deficiency payments pursuant to the development agreement. Appellants refused, arguing their obligation under the development agreement only continued until the 1982 bonds were repaid.

It is appellants' position that the 1983 refinancing repaid the 1982 bonds, thereby relieving them of the obligation to make deficiency payments. Upon appellants' refusal to make the deficiency payments, the City commenced this action.

## ISSUE

Did the trial court err in granting summary judgment for the City, finding that

section 10 of the development agreement is valid, and finding appellants liable for the 1989 and 1990 deficiency payments?

## ANALYSIS

■ Summary judgment may be granted when the evidence shows there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal from a summary judgment, this court must determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989).

■ When reviewing a summary judgment, the reviewing court "must take a view of the evidence most favorable to the one against whom the motion was granted." *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954). If the reviewing court finds that material issues of fact need to be determined, the case is to be remanded to the trial court without a decision on the legal issues. *Caledonia Community Hosp. v. Liebenberg, Smiley, Glotter & Assocs.* 308 Minn. 255, 258–59, 248 N.W.2d 279, 281 (1976).

■ The general rule for construction of contracts is that where language is plain and unambiguous, there is no room for construction. *Starr v. Starr*, 312 Minn. 561, 562–63, 251 N.W.2d 341, 342 (1977); *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974) (where language of contract is plain and unambiguous, there is no need for construction and meaning should be determined in accordance with plainly expressed intent). Whether a contract is ambiguous is a question of law. *Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 643 (Minn.App. 1985) *pet. for rev. denied* (Minn. Jun. 24, 1985). The interpretation of a contract is a question of law if no ambiguity exists, but if ambiguous, it is a question of fact and extrinsic evidence may be considered. *Id.* "On appeal, a reviewing court may make a determination of whether a contract is ambiguous without deference to the trial court's determination." *Id.* "A contract is ambiguous if it is *reasonably* susceptible to more than one construction." *Id.* at 644 (emphasis added).

■ Appellants argue they are no longer obligated to make deficiency payments under section 10 of the development agreement because the obligation only continues "during the period of repayment of *the* tax increment bonds." (Emphasis added). It is appellants' position that the word "the" refers only to the bonds issued in 1982 because those were the only bonds issued to acquire funds for the purpose of obtaining land for the development. Appellants point out that section 7 of the resolution, by which the City issued the bonds, provides (1) that the bonds will cease to be outstanding upon discharge, and (2) includes in the definition of discharge the creation of an escrow account to repay the bonds. It is appellants' position that, since an escrow account was created from the proceeds of the 1983 bond issue, the 1982 bonds are no longer outstanding and their obligation under the development agreement is terminated.

The interpretation of the development agreement offered by appellants is unreasonable; it is inadequate to create an ambiguity so as to make the interpretation of the agreement a factual question, thereby rendering summary judgment inappropriate. The provision in the City's 1982 resolution that deems the bonds to be no longer outstanding upon creation of an escrow account only so deems them "under this resolution." It does not repay the purchasers of the bonds and it does not affect appellants' obligation under the development agreement.

Refinancing of projects by successive bond issues is common practice and is allowed under Minnesota law. To interpret the development agreement according to appellants' theory would result in a windfall to appellants and a detriment to the City in the form of less security for repayment of the bonds. Appellants have received exactly what they bargained for,

there is no showing that they are being harmed by the refunding.

DECISION

Affirmed.