**Arnold HELGERSON, Jr., Appellant,**

v.

**BRIDON CORDAGE, INC., Respondent.**

**No. C0-94-39.**

Court of Appeals of Minnesota.

July 5, 1994.

Review Denied Aug. 24, 1994.

Michael C. Zender, Steven T. Rizzi, Jr., Alderson, Ondov, Leonard, Sween & Rizzi, P.A., Austin, for appellant.

John S. Beckmann, Mary C. Leahy, Hoversten, Strom, Johnson & Rysavy, Austin, for respondent.

Considered and decided by LANSING, P.J., and FORSBERG and DAVIES, JJ.

## OPINION

FORSBERG, Judge.

Arnold Helgerson, Jr. sued his former employer, respondent Bridon Cordage, Inc., claiming respondent discriminated against him based on his disability with respect to the terms, conditions, and privileges of employment, in violation of Minn.Stat. § 363.03, subd. 1(2)(c) (1986). Helgerson also claimed respondent's system of employment unreasonably excluded Helgerson, and that respondent unlawfully failed to provide reasonable accommodation for Helgerson's disability. *See* Minn.Stat. § 363.03, subd. 1(2)(a), 1(6) (1986). Helgerson appeals the district court's grant of summary judgment for respondent and dismissal of his claim with prejudice. We affirm.

## FACTS

Appellant Arnold Helgerson, Jr. is afflicted with Systemic Lupus Erythematosus (Lupus). Lupus is a permanent disease which can be severe or can be in remission at times. During flare-ups, appellant suffers extreme fatigue, joint pain, nausea, pleurisy (inflammation of the membranes surrounding the lungs), and back pain. During remission, appellant experiences slight fatigue and joint pain. Lupus can be affected by a person's sleep habits, physical and emotional stress, and medication.

Appellant became employed by respondent Bridon Cordage at its Albert Lea plant in April 1981. Respondent manufactures polypropylene twine. Appellant worked as a production laborer, a job which requires bending, stooping, lifting and standing for long periods. Respondent operates its plant 24 hours per day, with four 12-hour shifts. Appellant was assigned to one of the night shifts.

Respondent requires its production employees to participate in all phases of the production of the twine, from the initial extrusion phase to the final boxing and tagging for distribution. Extrusion consists of placing the raw material, polypropylene plastic, onto large spools. Each employee spends two hours of a 12-hour shift working in the extrusion phase. The plastic on the spools is then wound onto a spinning machine, which twists the plastic threads together to form the twine. Each employee spends six hours of a 12-hour shift working on these spinning machines. The finished twine is then packaged for distribution. Employees spend four hours of their 12-hour shift in this phase, alternating among positions called "puller," "tagger," and "boxer." This requires lifting 9 to 25 pound spools of twine on a repetitive basis. Respondent requires its employees to rotate among all phases of production in order to avoid fatigue, boredom, and repetitive motion injuries.

Appellant was diagnosed with Lupus in December 1986. Appellant's physician recommended that he follow a regular sleep schedule, and not work more than eight hours per day. The physician also recommended that appellant not lift more than 10 pounds on a repetitive basis (more than three times per hour), and never lift more than 30 pounds.

Appellant requested several accommodations from respondent to enable him to keep his job. Appellant requested temporary assignment to the day shift. He asked to be allowed to work eight-hour shifts rather than 12-hour shifts. He also requested that he be exempt from the regular activity rotation so that he would only be required to perform tasks which didn't aggravate his condition. Respondent refused each request. Since appellant was unable to perform a majority of his job duties, he left employment with respondent in August 1987.

Appellant brought suit in August 1992 claiming respondent had discriminated against him on the basis of his disability in violation of the Minnesota Human Rights Act. *See* Minn.Stat. ch. 363 (1986). Respondent moved for summary judgment and dismissal of appellant's claim in September 1993. Respondent admitted in an answer to supplemental interrogatories on December 6, 1993, that one of its employees, M.A., had been accommodated for a non-work-related injury. The district court granted summary judgment for respondent on December 7, 1993. This appeal followed.

## ISSUE

Did the district court rule correctly that there were no issues of material fact and that respondent was entitled to judgment as a matter of law?

## ANALYSIS

Appellant claims the district court erred in granting respondent's summary judgment motion. "On appeal from summary judgment, this court must determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law." *City of Va. v. Northland Office Properties, Ltd.*, 465 N.W.2d 424, 427 (Minn.App.1991), *pet. for rev. denied* (Minn. Apr. 18, 1991). The reviewing court "must take a view of the evidence most favorable to the one against whom the [summary judgment] motion was granted." *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

■ The Minnesota Human Rights Act prohibits employers from discriminating against workers with disabilities with respect to conditions of employment. Minn.Stat. § 363.03, subd. 1(2)(c) (1986). A plaintiff must show the following elements for a prima facie case of discrimination:

1. Plaintiff is a member of a protected class; and

2. Was qualified for opportunities that the employer made available to others; and

3. Although qualified, plaintiff was denied the opportunities; and

4. After denial, the opportunities remained available to others with plaintiff's qualifications.

*LaMott v. Apple Valley Health Care Ctr., Inc.*, 465 N.W.2d 585, 589 (Minn.App.1991). If an employee fails to present a prima facie case, summary judgment is appropriate. *Albertson v. FMC Corp.*, 437 N.W.2d 113, 116 (Minn.App.1989).

There is no dispute that appellant's condition renders him disabled within the meaning of the statute. Appellant's physician recommended that appellant not work more than eight hours per day. Appellant was not to lift more than 10 pounds on a repetitive basis (more than three times per hour), and never lift more than 30 pounds. Appellant testified in his deposition that the only part of his work that did not aggravate his Lupus condition was extrusion and tagging. Without an accommodation, on a 12–hour shift, therefore, appellant could only perform two to four hours of the labor required of other employees.

To establish membership in a protected class, appellant must show he is a "qualified disabled person." A "qualified disabled person" is one who, "with reasonable accommodation, can perform the essential functions required of all applicants for the job." Minn. Stat. § 363.01, subd. 25a(1) (1986). Appellant argues that with reasonable accommodation he could have performed tasks required of all the other production employees.

■ An employer can be required to make reasonable accommodations to the known disability of a qualified disabled person, unless the accommodation would impose an undue hardship on an employer. Minn.Stat. § 363.03, subd. 1(6) (1986).

"Reasonable accommodation" may include but is not limited to: (a) making facilities readily accessible to and usable by disabled persons; and (b) job restructuring, modified work schedules that do not reduce the total number of hours normally worked, acquisition or modification of equipment or devices, and the provision of aides on a temporary or periodic basis. *Id.* When determining whether an accommodation would impose an undue hardship

on an employer, the court must consider, among other factors, the overall size of the business, the type of operation, and the nature and cost of the accommodation. *Id.*

To accommodate his disability, appellant requested he be allowed to work an eight-hour rather than 12-hour shift, or that he be allowed to work on only some of the production tasks. Respondent argues these accommodations would impose an undue hardship, in effect requiring the creation of a new job category unlike any other at its facility.

We agree. Allowing appellant these accommodations would unreasonably burden both his employer and his co-workers. Respondent would be faced with a radical restructuring of its production schedule. The other employees would be required to spend more time on the tasks appellant could not perform, and would face increased exposure to the very hazards the job rotation plan was designed to prevent.

Appellant's requested accommodations would require respondent to create a new, one-person job category independent of both the work hours and the job rotation schedule required of all other production employees. We believe this goes beyond the requirements of the statute. *Cf. Magel v. Federal Reserve Bank of Phila.*, 776 F.Supp. 200, 204 (E.D.Pa.1991) (construing antidiscrimination statutes and regulations similar to the Minnesota Human Rights Act, the court held "[h]owever reasonable accommodation is defined, it does not include creating a new job.").

Appellant argues *LaMott* requires respondent to modify his work schedule to accommodate his disability. We disagree. The plaintiff in *LaMott* suffered from short-term memory loss as a result of an aneurysm. *LaMott*, 465 N.W.2d at 586. To return to her job as a housekeeper, the plaintiff learned to use memory logs or checklists to help her complete routine tasks. *Id.* The plaintiff also used a job coach during a two-week probationary period. *Id.* at 587. This job coach testified that the plaintiff could complete all of her tasks if she used her checklists, and if she worked with another housekeeper for one to two years. *Id.* This court held that was a reasonable accommodation because the second housekeeper would not be doing the plaintiff's work for her. *Id.* at 591. Rather, the two of them would work together to clean two floors instead of each housekeeper cleaning one floor alone. *Id.* And, the plaintiff would need to work with the second housekeeper for only one to two years. *Id.*

Appellant, in contrast, has a permanent condition. Appellant cannot perform some of the tasks required of production workers because those tasks aggravate his condition. Unlike the situation in *LaMott*, granting appellant's requested accommodations would require his coworkers to complete some of his tasks for him. We believe this would impose an undue hardship on respondent's operation.[1]

Appellant also requested he be assigned to the day shift. Respondent argues this would violate its system of assigning employees to shifts based on seniority. The provisions for reasonable accommodation do not apply to bona fide seniority systems which mandate differences in job assignments. Minn.Stat. § 363.02, subd. 1(4) (1986). Respondent had such a plan in effect when appellant requested a transfer to the day shift.

Appellant asserts that respondent's reliance on the seniority system was a subterfuge to avoid the statute. The seniority system, however, was in place before appellant was diagnosed with Lupus. To successfully oppose a motion for summary judgment, "a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial." *Kletschka v. Abbott–Northwestern Hosp.*, 417 N.W.2d 752, 754 (Minn. App.1988), *pet. for rev. denied* (Minn. Mar. 30, 1988).

---

1. It is not clear whether the information regarding respondent's accommodation of its employee M.A. was before the district court. In any event, M.A. had a temporary disability due to an automobile accident, and like the plaintiff in *LaMott* was eventually able to return to her former duties.

Appellant does not meet the criteria for a qualified disabled person under the statute. Appellant cannot perform the essential functions required of all production employees without an accommodation. The requested accommodations would either impose an undue hardship on respondent or would be barred by respondent's bona fide seniority system. And, even if respondent granted the requested accommodations, appellant would be able to perform only a fraction of the work required of all other production employees. As appellant cannot show that he is a qualified disabled person, he cannot establish that he is a member of a protected class, and therefore cannot establish a prima facie case of employment discrimination.

Appellant argues the district court only granted a partial summary judgment because the court's memorandum did not address his second claim that respondent's employment system unreasonably excluded him in violation of Minn.Stat. § 363.03, subd. 1(2)(a). We disagree. While the district court did not address this issue in its memorandum accompanying the order, the order itself explicitly granted summary judgment to respondent on all counts of appellant's complaint.

Appellant argues alternatively that a grant of summary judgment on this count was improper because there were genuine issues of material fact. Appellant argues that respondent's job rotation plan violates the Human Rights Act because, although facially neutral, it falls more harshly on disabled persons. We disagree. The Act prohibits employment practices which *unreasonably* exclude disabled persons. Minn.Stat. § 363.03, subd. 1(2)(a) (emphasis added). An employment practice which excludes a protected class is prohibited if the practice cannot be shown to be related to job performance. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Respondent's job rotation plan is designed to reduce fatigue and repetitive-motion injuries, and as such is intimately related to job performance. For that reason, the district court concluded, correctly, that the practice did not unreasonably exclude appellant.

## DECISION

The district court properly concluded there were no genuine issues of material fact. Appellant could not establish a prima facie case of employment discrimination. Respondent was entitled to judgment as a matter of law.

**Affirmed.**