**LAKE CABLE PARTNERS, a Maryland general partnership, Appellant,**

v.

**INTERSTATE POWER COMPANY, a Delaware corporation doing business in Minnesota, Respondent,**

**Advanced Telemarketing, a Minnesota partnership, et al., Defendants.**

No. C4-96-2333.

Court of Appeals of Minnesota.

May 13, 1997.

Review Denied July 10, 1997.

Katherine L. MacKinnon, Minneapolis, John T. Chapman, Scott H. Rauser, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, for Appellant.

Phillip S. Kohl, Christian & Peterson, Albert Lea, David L. Hammer, Angela C. Simon, Hammer, Simon & Jensen, Dubuque, IA, for Respondent.

Considered and decided by WILLIS, P.J., and RANDALL and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Lake Cable Partners (Lake Cable), a cable television company, and respondent Interstate Power Company (IPC), a utility company, challenge the district court's construction of their indemnity agreement as it relates to the death of a cable service company employee who was killed while working for Lake Cable on an IPC utility

pole. The district court found the indemnity agreement valid for the negligence claims brought by the employee's widow, including an amount in excess of the liability insurance minimum required by the agreement, but not for any claims that would support an award of punitive damages. We agree and affirm.

## FACTS

On September 26, 1994, Paul Nordstrom was killed when a utility pole on which he was working collapsed. At the time of the accident, Nordstrom was an employee of Advanced Telemarketing, which had contracted with Lake Cable to remove Lake Cable's attachments from utility poles owned by IPC. The work was necessitated by a new highway construction project near Garden City.

Nordstrom's widow initiated an action against IPC, alleging failure to warn Nordstrom of the pole's condition and failure to inspect and maintain the pole. Six months prior to Nordstrom's accident, IPC crews had partially broken the pole at its base and, over the objections of IPC linemen, straightened the 30–degree lean of the pole with a "down guy wire."[1] IPC later removed three power lines that had been attached to the pole, leaving only the cable wire and the down guy wire attached to the pole. At the time that Nordstrom had finished removing the cable wire, an IPC crew foreman happened by and told him, "I wouldn't be up on that pole if I were you. I think it is rotted off at the bottom. In fact, I know it is." Nordstrom was killed as he then started down the pole, and it collapsed.

IPC had entered into a licensing agreement that allowed Lake Cable to use its utility poles, but required Lake Cable to indemnify IPC as follows:

> The Licensee [Lake Cable] agrees to fully indemnify, defend and hold harmless the Licensor [IPC] from all claims, actions, suits, payments, costs, judgments, damages, attorney's fees and expenses includ-

ing any and all payments made under any Workmen's Compensation Law or for any other reason for either [IPC] or [Lake Cable]'s employees' disability injury and/or death which may be brought or made against [IPC] or which it may pay, sustain, or incur by reason of or be caused by the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of the parties hereto, or other joint users, or by any act of [sic] omission of [Lake Cable], its employees, agents, contractors or subcontractors, on or in the vicinity of [IPC]'s poles, including negligence on the part of [IPC] or claimed on the part of [IPC], and shall carry insurance satisfactory to [IPC] to cover any and all such possibilities.

The agreement also required Lake Cable to purchase liability insurance "with limits of not less than $250,000/$500,000."

IPC initiated this declaratory judgment action to determine the validity of the indemnity agreement.[2] All parties eventually made cross-motions for summary judgment. In granting summary judgment, the district court determined the indemnity agreement to be enforceable. The court concluded that the agreement required Lake Cable to indemnify and defend IPC for all underlying claims for compensatory damages, but that the agreement did not apply to punitive damages. The court further concluded that Lake Cable's duty to defend and indemnify was not limited to claims brought by Lake Cable or IPC employees and that the amount of recovery for indemnification was not limited to the $250,000/$500,000 amount required as an insurance minimum by the indemnity agreement. Lake Cable and IPC both appeal the grant of summary judgment.

## ISSUES

I. Did the district court err in concluding that the indemnity agreement between

---

1. While IPC disagrees with the facts as alleged by Lake Cable, IPC does not now challenge these facts because the only issue before this court is the validity of the indemnity agreement.

2. The district court was also asked to determine the validity of a second indemnity agreement between Lake Cable and Advanced Telemarketing. The court concluded that the indemnity agreement did not apply to claims arising out of Lake Cable's acts. Because neither party appealed this determination, we do not address it further in this opinion.

IPC and Lake Cable was valid as to compensatory damages?

II. Did the district court err in concluding that the indemnity agreement between IPC and Lake Cable was invalid as to punitive damages?

III. Did the district court err in declining to limit damages to the amount of insurance required to be procured by Lake Cable or actually procured by Lake Cable?

## ANALYSIS

 The construction and effect of an unambiguous contract are questions of law for the court. *See Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn. 1979). "Whether a contract is ambiguous is a legal determination[.]" *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982). On appeal from summary judgment, this court must determine whether there are any material fact issues and whether the trial court erred in applying the law. *See State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

## I.

Lake Cable contends that the district court erred in finding the indemnity agreement between IPC and Lake Cable to be valid regarding compensatory damages. In making this argument, Lake Cable contends that the agreement is inconsistent with Minn.Stat. § 238.40 (1994), a statute that requires, among other things, cable communications companies to indemnify utility companies for all damages that arise out of their use of utility companies' poles.[3]

### A. Minn.Stat. § 238.40

Minn.Stat. § 238.40 (1994) provides, in part, as follows:

Every pole, duct, and conduit agreement must contain a provision that the cable communications company shall defend, indemnify, protect, and save harmless the public utility from and against any and all claims and demands for damages to prop-

erty and injury or death to persons, * * * which may arise out of or be caused by the erection, maintenance, presence, use, or removal of the cable communications company's cable, equipment, and facilities or by the proximity of the cables, equipment, and facilities of the parties to the agreement, or by any act of the cable communications company on or in the vicinity of the public utility company's poles and conduit system, in the performance of the agreement. Nothing contained in this section relieves the public utility company from liability for the negligence of the public utility company or anyone acting under its direction and control.

Minn.Stat. § 238.42 provides that section 238.40 does not

in any way prohibit[ ] a public utility company from including in its pole, duct, and conduit agreements with cable communications companies additional terms which do not conflict [with section 238.40].

 Lake Cable contends that section 238.40 "expressly disapproves of indemnification for the utility's own negligence." We disagree. While the statute does not *require* a cable company to indemnify a utility company for the utility company's own negligence, neither does it *forbid* such an agreement between two companies. Indeed, the general indemnification language in this agreement closely parallels the language of the statute. Further, utility companies and cable companies may negotiate other "additional terms" that do not conflict with section 238.40. *See* Minn.Stat. § 238.42. In this case, the parties agreed to transfer liability for any loss caused by IPC's negligence to Lake Cable. The agreement does not violate section 238.40 or section 238.42.

### B. Case Law

 Minnesota case law also supports the validity of the indemnity agreement. A party to a contract may " 'properly bargain for indemnity against his own negligence where the latter is only an undesired possibility in

---

**3.** In regulating cable communications, the legislature recognized, among others, a need to "develop a state cable communications policy" and to "promote the rapid development of the cable communications industry responsive to community and public interest." Minn.Stat. § 238.01 (1994).

the performance of the bargain, and the bargain does not intend to induce the act.'" *St. Paul Fire & Marine Ins. Co. v. Perl*, 415 N.W.2d 663, 666 (Minn.1987) (quoting *Northern Pacific Ry. Co. v. Thornton Bros. Co.*, 206 Minn. 193, 197, 288 N.W. 226, 227–28 (1939) (citation omitted)).

In arguing that a party should not be able to require indemnification for its own negligence, Lake Cable primarily relies on case law involving construction contracts. *See, e.g., Katzner v. Kelleher Constr.*, 545 N.W.2d 378, 381 (Minn.1996). Those cases are not persuasive authority here, however, because indemnity agreements pertaining to construction contracts are by statute unenforceable, except to the extent that they require one party to provide insurance coverage for another. *See id.* at 381 (citing Minn.Stat. § 337.02 (1994)).

### C. Ambiguity

■ Lake Cable further contends that the indemnity agreement is ambiguous and should be strictly construed against IPC as the indemnitee and drafter of the agreement. *See Katzner*, 545 N.W.2d at 382 (ambiguity in an indemnity contract is resolved against the drafter); *Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.*, 281 N.W.2d 838, 842 (Minn.1979) ("Indemnity agreements are to be strictly construed when the indemnitee * * * seeks to be indemnified for its own negligence.").

We conclude that the language at issue here is not ambiguous. The indemnity language tracks the statutory language of section 238.40 and therefore should be presumed clear and valid. The specific language requiring Lake Cable to indemnify IPC for IPC's negligence includes "negligence on the part of [IPC] or claimed on the part of [IPC]." As the district court noted, this language is substantially similar to language found in two other cases: *Katzner*, 545 N.W.2d at 382 (negligence indemnification included phrase "regardless of whether or not [the claim] is caused in part by a party indemnified hereunder") and *Holmes v. Watson–Forsberg Co.*, 488 N.W.2d 473, 474 (Minn.1992) (requiring indemnitor to provide insurance coverage for all damages, including

"claims for which the [indemnitee] may be or may be claimed to be, liable"). While it is less than grammatically perfect in its modification of earlier language, this language conveys the clear intent that IPC be indemnified for its own negligence.

■ Finally, we disagree with Lake Cable's contention that the trustee in the underlying action is not a covered claimant. Lake Cable must indemnify against "all claims" brought against IPC. Any later modification of "all claims" does not limit the persons who may bring a claim. Based on this inclusive and broad language, the trustee is a person who may bring a claim. *See City of Virginia v. Northland Office Props. Ltd. Partnership*, 465 N.W.2d 424, 427 (Minn.App.1991) (contract ambiguous only if "reasonably susceptible" to different constructions) (citation omitted), *review denied* (Minn. Apr. 18, 1991).

### II.

The trial court concluded that despite the "all inclusive list of damages for which Lake Cable is obligated to indemnify" under the agreement, "strong public policy considerations preclude extending this obligation to include punitive damages."

■ The purpose of punitive damages is "to punish a wrongdoer and to deter others from like conduct." *Wojciak v. Northern Package Corp.*, 310 N.W.2d 675, 679 (Minn. 1981). The supreme court has held that a party may generally not insure against punitive damages. *See id.* Punitive damages may only be insured against by those who may be vicariously liable. *See Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 216 (Minn.1984).

As the trial court recognized, if one party is prohibited from insuring another against punitive damages, the same policy reasons would apply to prohibit one party from indemnifying another against an award of punitive damages. Because utility companies own and maintain the poles that are used by others, such as cable and telephone companies, they should not be allowed to shift risk for their intentional conduct to other users through indemnity contracts.

IPC contends that the exception to the general rule prohibiting insurance against punitive damages should apply here. The damages would be "awarded against a principal for the actions of an agent" because the trustee's claim arises out of a master/servant relationship. This characterization is not entirely accurate. The claimed negligent or intentional conduct involves IPC and its failure to inspect or warn Lake Cable of defects in IPC's pole. As such, it involves a direct claim against IPC, not a vicarious claim. For public policy reasons, Lake Cable may not indemnify IPC for IPC's conduct that would warrant an award of punitive damages.

### III.

Lake Cable contends that if the indemnification agreement is valid it should be limited to the amount of insurance required by the contract or the amount of insurance actually procured by Lake Cable. The language of the indemnity agreement does not support this claim. The agreement requires Lake Cable to "fully indemnify, defend and hold harmless [IPC]." The agreement also requires Lake Cable to carry "public liability insurance with limits of not less than $250,000/$500,000." Lake Cable contends that the language requiring the procured insurance to be "satisfactory to [IPC] to cover any and all possibilities" limits its indemnity obligation. Read in context, this language merely requires Lake Cable to cover the contingent fact situations that would give rise to its indemnifying IPC. In light of the clear expression of the indemnity agreement, the coverage is not limited by either the amount of insurance required by the agreement or the amount actually procured by Lake Cable. As Lake Cable argues, the indemnity and insurance aspects of an agreement are "almost invariably linked." *Hurlburt v. Northern States Power Co.,* 549 N.W.2d 919, 923 (Minn.1996). Nevertheless, in this case, Lake Cable must satisfy its express contractual indemnity obligation, even if that amount is greater than the minimum amount of insurance coverage required by the agreement. *Accord* Minn.Stat. § 238.41 (requiring cable communications company to provide insurance to protect itself and utility company from "any and all claims").

### DECISION

The district court did not err in concluding that the indemnification agreement required Lake Cable to indemnify IPC for IPC's negligence. Further, the trial court did not err in concluding that, for public policy reasons, the indemnity agreement between IPC and Lake Cable could not require Lake Cable to indemnify IPC for IPC's conduct that would support an award of punitive damages. Finally, the court did not err in concluding that Lake Cable's indemnity obligation was limited only by the indemnity agreement language and was not limited by either the amount of insurance Lake Cable actually purchased or was required to purchase under the agreement.

**Affirmed.**