**DAYTON PARK PROPERTIES, L.L.P., a Minnesota limited partnership, Plaintiff,**

v.

**PACIFIC LIFE INSURANCE CO., a California corporation, Defendant.**

No. CIV. 05248DSDSRN.

United States District Court, D. Minnesota.

April 14, 2005.

Court J. Anderson, Jeff I. Ross, and Anthony, Ostlund & Baer, Minneapolis, MN, counsel for plaintiff.

Clifford M. Greene, H. Allen Blair, Stacy L. Bettison, Greene Espel, Minneapolis, MN, and Daniel C. Malone, Jenny L. Floyd, and Dechert LLP—NYC, New York, NY, counsel for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court upon plaintiff's motion for partial summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court denies the motion and grants partial summary judgment in favor of defendant.

## BACKGROUND

This is a declaratory judgment action to ascertain a mortgagor's rights under a note and mortgage. On January 2, 1995, plaintiff Dayton Park Properties, L.L.P., ("Dayton Park") borrowed $2,400,000 pursuant to a Mortgage Note ("Note") and Mortgage, Assignment of Leases and Rents and Security Agreement ("Mortgage"). Defendant Pacific Life Insurance Company ("Pacific Life") services the mortgage loan. On January 19, 2005, Dayton Park notified Pacific Life that it intended to pay all outstanding principal and interest due under the Note through October 11, 2005, and to exercise its defeasance rights. Because the maturity date of the Note is January 11, 2006, Dayton Park would save three months' interest if it prepaid by the terms proposed. Furthermore, defeasance would allow a release of the lien on the mortgaged property. To meet the defeasance provisions of the Mortgage, Dayton Park has offered either to (1) tender a defeasance deposit of cash in the amount of all remaining principal and all remaining interest due under the Note or (2) deposit the cash with a mutually agreeable escrow agent which would continue to make the scheduled monthly payments. Pacific Life rejected Dayton Park's terms of prepayment and defeasance, claiming that the language of the loan documents does not allow such terms.

On February 3, 2005, Dayton Park brought this action against Pacific Life and Asset Securitization Corporation,[1] seeking declaratory judgment and alleging breach of note and mortgage agreements, breach of duty of good faith and fair dealing and breach of fiduciary duty. Dayton Park now moves for summary judgment on its declaratory judgment, breach of note and mortgage claims. Pacific Life requests summary judgment on those same claims.[2]

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.

---

**1.** On March 3, 2005, Dayton Park voluntarily dismissed Asset Securitization Corporation from the suit, pursuant to Federal Rule of Procedure 41(a)(1).

**2.** Pacific Life has not filed a motion, but has put Dayton Park on notice that it seeks summary judgment in its favor. (*See* Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 9–10, 20.)

R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *See id.* at 255, 106 S.Ct. 2505. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment may be granted in favor of a nonmoving party or entered sua sponte "if 'the losing party was on notice that [it] had to come forward with all of [its] evidence.'" *Stone Motor Co. v. Gen. Motors Corp.,* 400 F.3d 603, 607 (8th Cir.2005) (citing *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548).

## II. Contract Claims

 Dayton Park seeks a declaration that, under the terms of the financing agreements between it and Pacific Life, it can prepay the Note and defease the loan in the manner set forth by its notice to Pacific Life on January 19, 2005. Pacific Life maintains that these agreements do not allow prepayment and defeasance in the manner sought by plaintiff. "[C]onstruction of a written contract is a question of law for the district court and therefore summary judgment is particularly appropriate." *Knudsen v. Transp. Leasing/Contract, Inc.,* 672 N.W.2d 221, 223 (Minn.App.2003). Contract terms must be given their "plain and ordinary meaning" and will not be considered ambiguous merely because the parties dispute the terms' interpretation. *Id.* at 223. When a contract is unambiguous, "the parties' intentions as expressed in the four corners of the instrument" are controlling. *Id.* at 223. Finally, a contract and other writings relating to the same transaction must be construed with reference to each other. *Fredrich v. Indep. Sch. Dist. No. 720,* 465 N.W.2d 692, 695 (Minn.App.1991); *see also* Restatement (Second) of Contracts § 202(2) (2005) ("[A]ll writings that are part of the same transaction are interpreted together.").

### A. Prepayment

Dayton Park alleges that it presently has the right to prepay the loan. The Mortgage Note states:

> This Note may not be prepaid prior to the Maturity Date; provided, however, Maker shall have the right and option to release the Mortgaged Property (as defined in the Mortgage) from the lien of the Mortgage in accordance with the terms and provisions set forth in Paragraph 56 of the Mortgage (the ***Defeasance Option***"). Notwithstanding the foregoing sentence, Maker shall have the privilege to prepay the entire principal balance of this Note and any other amounts outstanding on any scheduled payment date during the three (3) months preceding the Maturity Date....

(Larson Aff. Ex. 1 at 3 (emphasis in original).) It is undisputed that the maturity date of the Note is January 11, 2006, and that the three scheduled payment dates preceding the maturity date are October 11, November 11 and December 11, 2005.

The first sentence in the prepayment provision of the Note unambiguously prohibits prepayment, except that such prohibition shall not affect Dayton Park's right to "release the Mortgaged Property ... from the lien of the Mortgage" under the defeasance terms set forth in the Mortgage. The second sentence then provides

that, notwithstanding the prepayment prohibition, Dayton Park has the right to prepay *"on* any scheduled payment date *during* the three (3) months preceding the Maturity Date." (*Id.* at 3 (emphasis added).) This contract language allows Dayton Park to prepay on only one of three days—October 11, November 11 or December 11, 2005.

■ Dayton Park argues that it has the right to pay all amounts due through October 11, 2005, at any time prior to that date. This assertion, however, is contrary to the plain language of the Note which allows Dayton Park to prepay only "on" one of the three scheduled payment dates before the maturity date.

Dayton Park also argues that it has the right to prepay when it defeases because the Note allows it to exercise its prepayment option "notwithstanding" the exercise of defeasance rights. (*See* Pl.'s Reply Mem. Supp. Mot. Summ. J. at 3.) "Notwithstanding" means "despite" or "in spite of." *See Black's Law Dictionary* 1094 (8th ed.2004). Dayton Park's interpretation would therefore allow it to prepay "despite" the exercise of its right to defease. Pacific Life disputes that interpretation and argues that the second sentence of the prepayment provision means that "despite" the general prohibition on prepayment, Dayton Park has a limited right to prepay.

The court adopts Pacific Life's interpretation for the following reasons. First, it does not conflict with the language of the Note. By contrast, Dayton Park's interpretation would allow prepayment on a date other than one of the last three scheduled payment dates. Second, Pacific Life's interpretation does not conflict with the language of the Mortgage. Because the Note and Mortgage were executed in the same transaction, the court must construe them with reference to each other. *See Fredrich,* 465 N.W.2d at 695. The

defeasance terms set forth in the Mortgage do not contemplate the right to prepay the Note at the time of defeasance. Instead, those terms require the provision of payments on "all successive scheduled payment dates ... upon which interest and principal payments are required under the Note (including the amounts due on the Maturity Date)." (*See* Larson Aff. Ex. 2 ¶ 56(a).) Dayton Park's interpretation of the Note contradicts this language by allowing Dayton Park, upon defeasance, to avoid interest that would otherwise become due before the maturity date. By contrast, Pacific Life's interpretation allows Dayton Park to either exercise its defeasance right or its prepayment right, but not both. Such an interpretation gives meaning and effect to all relevant terms of the Note and Mortgage. Therefore, summary judgment is granted in Pacific Life's favor on the breach of note claim.

**B. Defeasance**

Dayton Park alleges that it has the right to defease by providing a cash deposit in an amount equal to all remaining principal and interest due under the Note. The Mortgage allows for defeasance of the loan by substituting "U.S. Obligations" for the mortgaged property. (*See* Larson Aff. Ex. 2 ¶ 56.) As one of the prerequisites to secure the release of the mortgaged property, Dayton Park must pay a defeasance deposit. In connection with the required deposit,

Mortgagor hereby appoints Mortgagee as its agent and attorney-in-fact for the purpose of using the Defeasance Deposit to purchase U.S. Obligations which provide payments on or prior to, but as close as possible to, all successive scheduled payment dates after the Release Date upon which interest and principal payments are required under the Note (including the amounts due on the Matu-

rity Date) and in amounts equal to the scheduled payments due on such dates under the Note (the *Scheduled Defeasance Payments* ").

(*Id.* at ¶ 56(a) (emphasis in original).) Upon compliance with all defeasance provisions, "the pledged U.S. Obligations shall be the sole source of collateral securing the Note." (*Id.* ¶ 56(b).) "The term 'U.S. Obligations' shall mean direct non-callable obligations of the United States of America." (*Id.* ¶ 56(c)(iii) (emphasis omitted).)

■ Dayton Park alleges that it has the right to defease by substituting cash for the mortgaged property because "U.S. Obligations" includes cash. However, the Mortgage terms do not allow such an interpretation for at least two reasons. First, "U.S. Obligations" does not include cash because the Mortgage defines "U.S. Obligations" as "non-callable." The terms "callable" and "non-callable" are used to describe the redeemability of securities such as stocks and bonds, and do not refer to cash. In particular, "callable" means "redeemable by the issuer before the scheduled maturity," and "non-callable" means "preferred stock or bond that cannot be redeemed at the option of the issuer." John Downes & Jordan Elliot Goodman, *Dictionary of Finance & Investment Terms* 76, 397–98 (5th ed.1998); *see also* Jerry M. Rosenberg, *Dictionary of Banking & Finance* 67, 84, 355 (1982) (defining "noncallable" only as relates to bonds or securities that cannot be redeemed prior to maturity and "callable" as "a bond issue or preferred stock, all or part of which may be redeemed … before maturity"). Therefore, "U.S. Obligations" must refer to U.S. securities in order to give meaning to the term "non-callable."

■ Second, the term "U.S. Obligations" must preclude cash in order to give meaning and effect to other terms of the Mortgage. A contract must be interpreted so as to give all of its provisions meaning and to harmonize all of its parts. *Smith v. State Farm Fire & Cas. Co.*, 656 N.W.2d 432, 436 (Minn.Ct.App.2003) (citing *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995), and *Country Club Oil Co. v. Lee*, 239 Minn. 148, 58 N.W.2d 247, 249 (1953)); *see also Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 480 N.W.2d 368, 375–76 (1992) (looking to dictionary definitions and context within the contract to determine that contract term is unambiguous). Here, if the term "U.S. Obligations" includes cash, then Pacific Life must use "the Defeasance Deposit to purchase [cash] which provide[s] payments on or prior to, but as close as possible to, all successive scheduled payment dates …." (*See* Larson Aff. Ex. 2 ¶ 56(a).) Such a reading is senseless because it requires the purchase of cash. Furthermore, the provision of payments on scheduled payment dates has little meaning if Pacific Life keeps the defeasance deposit as cash.[3] Therefore, the court finds that interpreting "U.S. Obligations" to mean cash impermissibly strips the contract language of its intended meaning.

Dayton Park argues that instead of tendering a cash payment to Pacific Life, it could deposit the outstanding amounts with an escrow agent that would continue to make the monthly payments as scheduled. However, not only does this method of defeasance encounter many of the same interpretation problems discussed above, but Pacific Life's role as "agent and attorney-in-fact for the purpose of using the

---

**3.** The term "Yield Maintenance Premium" would also lose meaning. That term is defined as the amount "which, when added to the remaining principal amount of the Note,

will be sufficient to purchase U.S. obligations providing the required Scheduled Defeasance Payments." (*Id.* at ¶ 56(c)(ii).)

Defeasance Deposit to purchase U.S. Obligations" would also lose meaning and effect.

Finally, Dayton Park argues that because the term "U.S. Obligations" is ambiguous, it must be construed against Pacific Life as the drafter of the document. However, a contract term is not ambiguous merely because the parties dispute its meaning. *See Knudsen,* 672 N.W.2d at 223. Here, the unambiguous meaning of the term "U.S. Obligations" precludes cash, as defined by the Mortgage and interpreted in the context of the term's use. Dayton Park has failed to show otherwise. Therefore, summary judgment in favor of Pacific Life on Dayton Park's breach of mortgage claim is warranted.

### III. Declaratory Judgment Claim

The remainder of Dayton Park's arguments shows that it seeks to modify the loan documents in the interests of efficiency and common sense. Pacific Life argues that it must adhere to the unambiguous terms of the Note and Mortgage, but the court notes a justification is not necessary. Pacific Life has "the undoubted right to insist on a compliance with the terms of the contract." *Plano Mfg. Co. v. Klatt,* 87 Minn. 27, 31, 91 N.W. 22, 24 (1902). Therefore, a declaration that Dayton Park is entitled to the modifications it requested on January 19, 2005, is inappropriate. For all of the above reasons, summary judgment in favor of Pacific Life on Dayton Park's declaratory judgment claim is warranted.

### CONCLUSION

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for partial summary judgment [Docket No. 6] is denied.

2. Summary judgment is granted in favor of defendant on Counts I, II and III.