In the Matter of the Placement on
Unrequested Leave of Terrill
FREDRICH, Relator,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 720, Respondent.

No. C1–90–1577.

Court of Appeals of Minnesota.

Feb. 5, 1991.

Review Denied April 29, 1991.

Harley M. Ogata, Christina L. Clark, Minnesota Educ. Ass'n, St. Paul, for relator.

James E. Knutson, Knutson, Flynn, Hetland & Deans, St. Paul, for respondent.

Considered and decided by FOLEY, P.J., and NORTON and SHORT, JJ.

## OPINION

FOLEY, Judge.

Review was granted upon writ of certiorari of a school district decision placing relator Terrill Fredrich on an unrequested leave of absence. The dispute centers on the school district's interpretation of the word "step" in a collective bargaining agreement while determining seniority. The school district's decision is reversed, and Fredrich is to be reinstated with full back pay and benefits.

## FACTS

Respondent Independent School District No. 720 and the Shakopee Education Association entered into a contract pursuant to Minn.Stat. § 125.12, subd. 6a (1988). Among other provisions, the contract included a procedure for determining seniority where unrequested leave is involved. At issue is a plan for a seniority list as part of the 1989–91 collective bargaining agreement. The need to place a teacher on unrequested leave of absence is not in dispute. To determine seniority in a tie-breaking situation, the agreement provided:

> In the event of a staff reduction, action affecting teachers whose first date of employment commenced on the same date, and have equal seniority, the selection of the employee for purposes of discontinuance shall be in the following order:
>
> a. Step
>
> b. Lane
>
> c. Discretion of school district based upon performance, training, experience, skills in special assignments, and other relevant factors.

Fredrich and Shirley Dahl were hired by the Shakopee School District in August 1969, and each was ranked according to experience. Dahl was ranked at step 5. Fredrich had more teaching experience; therefore, he was given a rank of step 6 and ranked higher on the salary schedule. Fredrich's seniority was established at this time.

At the end of the 1989–90 school year, Fredrich and Dahl both were placed on step 21 of the salary schedule. However, as illustrated by documents received at the hearing, including salary calculations (teacher exhibit No. 3) and notices of assignment (teacher exhibit No. 4), Fredrich was ranked at step 26 and Dahl at step 25. To arrive at this ranking, teaching experience would necessarily have been included.

The 1989–90 posted seniority list did not include step placement, but listed the teach-

ers' names, dates of employment and the subjects that they taught. The 1989–90 posted seniority list showed Dahl's name ahead of Fredrich's and showed that both teachers started in 1969, with no explanation as to why Dahl was listed ahead of Fredrich.

At the end of the 1989–90 school year, the school district had to place two business teachers on unrequested leave of absence. The school district proposed placing Fredrich on an unrequested leave of absence and accorded Dahl seniority.

When Fredrich received notice of the proposal, he requested a hearing regarding his seniority status. The hearing officer determined that, according to the terms of the collective bargaining agreement, Fredrich should be placed on unrequested leave of absence.

The hearing examiner concluded:

That Fredrich and Dahl have the same initial employment date and are both on Step 21 of the 1989–90 salary schedule and that Dahl is on a higher lane than Fredrich on the 1989–90 salary schedule and, therefore, Dahl has more seniority than Fredrich.

The school district unanimously adopted the hearing officer's findings and conclusions. Fredrich seeks reversal and reinstatement with full back pay and benefits.

### ISSUES

1. Did the school district err in its application of the collective bargaining agreement by interpreting "step" as a step in the current salary schedule?

2. Did Fredrich waive his right to contest an unrequested leave of absence by failing to file a timely grievance?

### ANALYSIS

■ ■1. A school district's decision can be overturned only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, outside the school district's jurisdiction, or based on an erroneous theory of law. *Kroll v. Independent School Dist. No. 593*, 304 N.W.2d 338, 342 (Minn.1981)

(citing *Liffrig v. Independent School Dist. No. 442*, 292 N.W.2d 726, 729 (Minn.1980)). Fredrich challenges the school district's interpretation of the word "step" as used in the collective bargaining agreement.

The definition of the word "step" is crucial in determining seniority status and thus the order in which the teachers are placed on unrequested leave of absence. Seniority is the controlling principle behind a teacher's right to a teaching position. *See Harms v. Independent School Dist. No. 300*, 450 N.W.2d 571 (Minn.1990). Seniority is also an overriding policy. *Strand v. Special School Dist. No. 1*, 392 N.W.2d 881, 885–86 (Minn.1986). Here, it is clear that the hearing examiner, as well as the school district, defined "step" solely by salary, necessitating the interpretation of the meaning of the word "lane" in what the hearing officer and school district considered a tie-breaking situation.

Fredrich contends "step" means the initial placement number assigned to him when he began teaching with the school district plus the number of years he was employed by the school district. The hearing officer, however, found the meaning of the word "step" was interpreted as "step" in the salary schedule. The hearing officer noted:

The teacher who is paid on the higher step on the salary schedule has more seniority. In the event of two or more teachers are being paid on the same step of the salary schedule * * * such teachers have equal seniority and the School District must proceed to * * * "lane" to break the tie.

■ Appellate review is limited to the record. *Liffrig*, 292 N.W.2d at 729. In an administrative hearing, evidence is liberally received. *Morey v. School Board of Indep. School Dist. No. 492*, 271 Minn. 445, 448–49, 136 N.W.2d 105, 107–08 (1965). Here, the record includes contract proposals introduced during negotiations between the school district and the Shakopee Education Association, the contract itself, and notices of assignment and salary schedules sent to teachers following the adoption of the contract. Factfinding is the role of the

administrative body, but it is for this court to determine whether the conclusions are right or wrong. *Id.* at 450, 136 N.W.2d at 108.

> When a teacher's job is at stake, a just concern for fair play would require that the evidence * * * should be relevant and have probative value.

*Id.* at 449, 136 N.W.2d at 108.

The hearing officer concluded:

> That the 1989–91 Agreement is clear and unambiguous and specifically provides that in the event more than one teacher has the same initial date of employment, that ties in seniority shall be broken first by highest step placement on the salary schedule in effect at the time of placement on unrequested leave of absence, i.e. 1989–90 salary schedule placement, and that in the event more than one teacher is on the same step of the salary schedule, ties shall be broken by higher lane placement.

We find this to be erroneous. A contract is ambiguous if its language can be given more than one interpretation. *Lamb Plumbing & Heating v. Kraus–Anderson of Minneapolis, Inc.*, 296 N.W.2d 859, 862 (Minn.1980). Whether the contract is ambiguous is a legal determination. *Republic Nat'l Life Ins. v. Lorraine Realty, Corp.*, 279 N.W.2d 349, 354 (Minn.1979).

The meaning of "step" is not clearly ascertainable from the contract. Therefore, as a matter of law, the contract is ambiguous. *See Employer's Liab. Assurance Corp. v. Morse*, 261 Minn. 259, 264, 111 N.W.2d 620, 624 (1961). Here, basic rules of contract law apply.

■ "A contract of employment is governed by the same rules applicable to other types of contract." *Smith v. Employers Overload Co.*, 314 N.W.2d 220, 223 (Minn.1981). The interpretation of a teacher employment contract should be treated the same as other contracts, having in mind the objective of the contract. The objective here is to determine seniority rights of the teachers governed by the contract and to give recognition to the intent of the parties to the collective bargaining agreement upon which the teachers had a right to rely.

A contract and other writings in the same transaction should be construed with reference to each other. *Knut Co. v. Knutson Constr. Co.*, 433 N.W.2d 149, 151 (Minn. App.1988), *aff'd and rem'd*, 449 N.W.2d 143 (Minn.1989).

■ Since the contract is ambiguous, this court may look at extrinsic evidence to interpret the contract. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982). To determine intent of the parties, the court looks at surrounding circumstances and the parties' own subsequent conduct. *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946, 951 (Minn.1981), *aff'd and rem'd*, 664 F.2d 660 (8th Cir.1981). The most probative evidence is the actions of the parties afterwards. *Davis by Davis v. Outboard Marine Corp.*, 415 N.W.2d 719, 724 (Minn.App.1987), *pet. for rev. denied* (Minn. Jan. 28, 1988).

■ To determine the meaning of the word "step" the hearing officer looked solely to the salary schedule and the negotiation proposals between the school district and the Shakopee Education Association. However, proposals offered and rejected at a bargaining session to clarify issues are not probative where better evidence is available. *Matter of Bristol*, 451 N.W.2d 883, 886 (Minn.App.1990). The proposals do not indicate acquiescence nor past practice and are not contracts in themselves. *See 451 Corp. v. Pension Sys. for Policemen & Firemen*, 310 N.W.2d 922, 924 (Minn.1981).

It is clear from the findings and conclusions of the hearing officer that, because he referred to the salary schedule which places both Dahl and Fredrich on step 21, he erroneously removed previously established seniority. He gives no recognition to the seniority established by Fredrich when he was first hired. We find no provision of the collective bargaining agreement that purports to change or eliminate the seniority acquired by Fredrich when he was first hired in 1969.

■ The more probative evidence is found in the documents showing the parties' conduct after they entered the con-

tract. Here, the notice of teacher assignment and the worksheet for the salary adjustment sent to each teacher in the district after the parties reached a collective bargaining agreement, and as recently as February 1990, is more probative of the parties' intent than the unadopted contract proposals. The notice of assignment indicates that Fredrich is step 26 and Dahl is step 25. The worksheet also indicates Fredrich is at step 26. Both of these documents are exhibits in the case and were relied upon by Fredrich.

Thus, it appears both parties intended "step" to include the previous teaching experience plus the years employed at the school district. The hearing officer, however, focused on the negotiation proposals and determined that "step" meant only the salary schedule. We find this conclusion erroneous.

 Applying the principles of contract law, we hold that the interpretation the parties themselves place on the contract is entitled to great, perhaps controlling, weight in ascertaining the terms of the contract. *Kastner v. Dalton Development, Inc.*, 265 Minn. 511, 513, 122 N.W.2d 183, 187 (1963).

It is clear by the conduct of the parties that the word "step" means years of experience and years employed by the school district. The school district placed significance on its interpretation of the contract when it sent letters after contract implementation notifying the teachers of their assignment and salary. In the computation of their salaries in these documents "step" is clearly used in computing salary level. Salary level is not itself the "step." "Step" also is illustrative of teachers' past years of experience. This points to the conclusion that "step" means seniority rather than salary level. Thus, neither the meaning of "lane" nor subparagraph c of the contract tie-breaking provision is necessary to the decision.

Because Fredrich's step was 26 and Dahl's step was 25, Fredrich has more seniority than Dahl and should be reinstated with back pay and wages.

2. The school district contends that Fredrich waived his right to contest his unrequested leave of absence because he failed to file grievances contesting his placement on posted seniority lists. Neither the hearing officer nor the school district addressed this issue. Both went directly to the merits of the case, i.e., the interpretation of the contract language. We find the school district cannot bring before us issues it has not raised before the hearing officer. *See* Minn.Stat. § 14.68 (1988). Therefore, we do not review this issue.

### DECISION

The hearing officer and school district erred in application of the law. The collective bargaining contract is ambiguous. Extrinsic evidence shows that Fredrich has more seniority than Dahl. Fredrich is to be reinstated with full back pay and benefits.

Reversed.