# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 15-1420

———————————————

Loftness Specialized Farm Equipment, Inc.

*Plaintiff - Appellee*

v.

Terry Twiestmeyer; Steven Hood; Twiestmeyer & Associates, Inc.

*Defendants - Appellants*

—————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

—————————

Submitted: October 19, 2015
Filed: March 15, 2016

—————————

Before WOLLMAN, BEAM, and GRUENDER, Circuit Judges.

—————————

GRUENDER, Circuit Judge.

Loftness Specialized Farm Equipment, Inc. ("Loftness") brought a declaratory judgment action against Terry Twiestmeyer, Steven Hood, and Twiestmeyer & Associates, Inc. ("TAI") involving contracts associated with the development, manufacture, and sale of grain-bagging equipment. Twiestmeyer, Hood, and TAI then asserted counterclaims against Loftness for, among other things, breach of two

contracts: an agreement providing for two-percent override payments ("Override Agreement") on grain-bagging-equipment sales and a non-disclosure agreement ("NDA"). The district court granted Loftness's motion for summary judgment on the breach-of-contract counterclaims and entered judgment for Loftness on its claim for declaratory judgment. Twiestmeyer, Hood, and TAI appealed. This court affirmed the district court's grant of summary judgment to Loftness on the counterclaim for breach of the Override Agreement and affirmed the dismissal of the unjust enrichment counterclaim, but we vacated and remanded the grant of summary judgment on the counterclaim for breach of the NDA. *Loftness Specialized Farm Equipment, Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2015) ("*Loftness I*"). On remand, the district court again granted Loftness's motion for summary judgment on the claim for breach of the NDA. Twiestmeyer, Hood, and TAI again appeal. We vacate the grant of summary judgment and remand for further proceedings.

I.

Loftness is a corporation that manufactures and sells farm-machine attachments. Terry Twiestmeyer owned TAI, an independent sales representative that sold farming equipment on behalf of Loftness and other manufacturers. Hood's company, Hood & Company, Inc., also served as a sales representative for Loftness.

Twiestmeyer and Hood sold grain-bagging equipment manufactured in Argentina. This experience provided them with knowledge about the market for grain-bagging equipment and insight into possible improvements to the Argentinian-made equipment. In 2007, Twiestmeyer and Hood approached Loftness with an idea for a new line of grain-bag loaders and unloaders for Loftness to manufacture and sell. Loftness did not manufacture grain-bagging equipment prior to this time.

At the May 2007 initial meeting to discuss the potential new product line, Loftness and TAI executed the NDA. The NDA's "Protection of Confidential Information" provision states:

> [Loftness] acknowledges that [TAI] claims its Confidential Information as a valuable and unique asset . . . [Loftness] agrees that it will keep in confidence all Confidential Information, and that it will not directly or indirectly disclose to any third party or use for its own benefit, or use for any purpose other than the Project, any Confidential Information it receives from [TAI]. [Loftness] agrees to protect the Confidential Information, and agrees that in no event will it use less than the same degree of care to protect the Confidential Information as it would employ with respect to its own information of like importance that it does not desire to have published or disseminated.

The NDA defines "Confidential Information" as "[s]uch information that [TAI] considers to be proprietary and/or confidential." The "Competitive Business" provision establishes that "[Loftness] agrees not to use [TAI]'s confidential information in any way that could be construed as being competitive of [TAI]'s business for a period of twenty (20) years after the effective date of this Agreement."

Twiestmeyer and Hood shared confidential information with Loftness at this May 2007 meeting. Specifically, Twiestmeyer and Hood informed Loftness about the market for grain-bagging equipment, the need for such equipment in the United States, their suggested design improvements to the Argentinian-made equipment, and the timing for bringing such a product line to the market. After the meeting, Loftness representatives traveled to Arkansas and Nebraska to examine the Argentinian-made equipment, then reverse-engineered a prototype of a grain-bag unloader, which, according to Twiestmeyer and Hood, incorporated several of their ideas, including the addition of two clutches. Loftness also developed a grain-bag loader. Loftness began manufacturing and selling this equipment in 2008.

In May 2008, the parties entered the Override Agreement to establish Twiestmeyer and Hood's compensation for their role in developing the new product line. In this agreement, Loftness agreed to pay Twiestmeyer and Hood "a two percent (2%) override of the dealer net price on all grain bagging equipment and related products, except grain bags, sold by LOFTNESS during the term of the Agreement."[1] The Override Agreement specified a duration of two years.

In May 2010—just before the Override Agreement was set to expire—Loftness informed all of its independent sales representatives, including Twiestmeyer and Hood, that Loftness had reached a deal with Brandt Industries. Under this new agreement, Brandt Industries would sell Loftness-manufactured grain-bagging equipment, which allegedly incorporated TAI's design improvements and other confidential information.

Loftness continued paying the two-percent override to Twiestmeyer and Hood through the end of 2010, even though the Override Agreement had expired. In January 2011, Twiestmeyer and Hood approached Loftness with a new two-percent agreement. This proposed agreement included Grain Bag Storage Systems, Twiestmeyer and Hood's new business entity, as an additional party and provided for a ten-year term. Loftness declined, advising Twiestmeyer and Hood that it would stop using TAI's trademark and cease making the two-percent override payments after February 2011.

Loftness brought suit, seeking a declaratory judgment that it had no duty to pay Twiestmeyer, Hood, or TAI under any existing contract. Twiestmeyer, Hood, and TAI filed an answer and asserted five counterclaims: (1) breach of the Override Agreement, (2) breach of the NDA, (3) violation of the Uniform Trade Secrets Act,

---

[1]TAI is not a party to the Override Agreement.

-4-

(4) violation of the Uniform Deceptive Trade Practices Act, and (5) unjust enrichment. The district court granted Loftness's motion to dismiss with respect to counts three, four, and five. The parties then completed discovery, and Loftness moved for summary judgment on the two remaining breach-of-contract claims. The district court granted Loftness's motion for summary judgment on both claims. Twiestmeyer, Hood, and TAI appealed. On appeal, we affirmed the district court on the counterclaims for breach of the Override Agreement and unjust enrichment, but we vacated and remanded the grant of summary judgment on the counterclaim for breach of the NDA. *Loftness I*, 742 F.3d at 845, 851. The district court again granted Loftness's motion for summary judgment as to breach of the NDA. Twiestmeyer, Hood, and TAI again appeal.

## II.

We review a district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party. *Montin v. Johnson*, 636 F.3d 409, 412 (8th Cir. 2011). Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Specht v. City of Sioux Falls*, 639 F.3d 813, 819 (8th Cir. 2011). Our subject matter jurisdiction in this case is based upon diversity of citizenship, and the parties agree that Minnesota law applies. *See S. Wine & Spirits of Nev. v. Mountain Valley Spring Co., LLC*, 646 F.3d 526, 531 (8th Cir. 2011).

The sole issue before the district court in considering Loftness's motion for summary judgment on remand was whether there was any issue of material fact regarding TAI's claim that Loftness had breached the NDA by disclosing and using confidential information when it agreed to have Brandt Industries sell Loftness-manufactured grain-bagging equipment.

Critically, the district court determined that TAI's argument that Loftness breached the NDA by using TAI's confidential information for Loftness's own benefit was not properly before the court because that argument was not asserted in TAI's counterclaims. We disagree. Those counterclaims posited three theories of breach, namely, that Loftness breached the NDA by (1) "disclosing Confidential Information to Brandt for purposes other than the Grain Bag Storage System developed by Loftness and [TAI]," (2) "[u]sing Confidential Information in competition [with] the business developed as part of the Project," and (3) [f]ailing to protect the Confidential information from being published or disclosed as to third parties." The second theory of breach raised in the counterclaims appears fairly to encompass TAI's use-for-its-own-benefit argument.

Having disposed of the argument based on Loftness's use of confidential information for Loftness's own benefit, the district court instead focused on whether Loftness had disclosed TAI's confidential information in violation of the NDA. The language of the NDA, the district court found, protected the use or disclosure of "Confidential Information" related to the "Project," but the NDA did not prohibit the use or disclosure of project-related information that was no longer confidential. The district court then determined that the "Project" covered by the NDA was the development and marketing of the new grain-bagging product line with the intention of selling that product to the public, a definition supplied by TAI during the litigation and reinforced by testimony from both parties. According to the district court, this evidence conclusively showed that the parties intended the NDA to protect the confidential information pertaining to the project in the event Loftness decided not to develop, manufacture, and sell the new equipment; the parties did not intend to provide twenty-year protection for information that was confidential at the time the NDA was executed but later became publicly available when the grain-bagging equipment openly was sold to the public. Additionally, the court found that the information had, in fact, ceased to be confidential when the Loftness-built grain-bagging equipment was sold to the public, as the equipment came with an owner's

manual sufficiently detailed to enable any other manufacturer to replicate the equipment. The court reasoned that, because the confidential information initially protected by the NDA was no longer confidential, that information was no longer protected by the NDA when Loftness began its relationship with Brandt Industries. Therefore, the district court concluded, there was no genuine issue of material fact remaining as to Loftness's alleged breach of the NDA, rendering summary judgment for Loftness appropriate.

On appeal, TAI argues that the NDA protected the information TAI disclosed to Loftness for twenty years, regardless of whether the information subsequently became publicly available. Resolution of this argument turns on interpretation of the NDA. Under Minnesota law, "the primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). "Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." *Id.* "The general rule is that where the intention of the parties may be gained wholly from the writing, construction of a contract is a question of law for the court. However, where the terms are not clear and unambiguous, construction becomes a question of fact unless extrinsic evidence is conclusive." *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 751 (Minn. 2000). "Whether the terms of a contract are ambiguous is a question of law to be determined by the court." *Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 643 (Minn. Ct. App. 1985) (citing *Noreen v. Park Constr. Co.*, 96 N.W.2d 33, 36 (Minn. 1959)). "A contract is ambiguous if it is *reasonably* susceptible to more than one construction." *City of Virginia v. Northland Office Props. Ltd. P'ship*, 465 N.W.2d 424, 427 (Minn. Ct. App. 1991) (emphasis in original).

TAI contends that Loftness breached the NDA by using confidential information for Loftness's own benefit in its relationship with Brandt Industries while the twenty-year term of the NDA was still in effect, even though TAI admitted that

it no longer considered that information confidential at the time of Loftness's alleged breach. TAI argues that, at the time it entered the NDA and provided confidential information to Loftness, TAI considered the information to be confidential and, therefore, protected from future use or disclosure by Loftness for any purpose other than the TAI-Loftness grain-bagging project, including any competitive use, such as Loftness's subsequent relationship with Brandt Industries. Loftness, in turn, argues that it did not breach the NDA because it provides protection only for information that remained confidential at the time of the alleged breach. According to Loftness, the parties intended the NDA to protect TAI's confidential information until the successful manufacture and sale of the grain-bagging equipment rendered that information no longer confidential or for twenty years if the grain-bagging project never came to fruition. Under that interpretation, Loftness contends that it could not have breached the NDA because TAI no longer considered the information at issue confidential at the time of Loftness's alleged breach. Despite these competing interpretations of the meaning and implications of "confidential information," neither party argued before the district court that the NDA was ambiguous, and the district court premised its reasoning on this seeming point of agreement, finding in favor of Loftness's interpretation. On appeal, however, "a reviewing court may make a determination of whether a contract is ambiguous without deference to the trial court's determination." *Blackburn*, 366 N.W.2d at 643.

The NDA's "Protection of Confidential Information" provision bound Loftness to "not directly or indirectly disclose to any third party or use for its own benefit, or use for any purpose other than the Project, any Confidential Information it receives from [TAI]." Likewise, the competitive-business provision indicated that Loftness agreed not to use any "confidential information in any way that could be construed as being competitive of [TAI's] business for a period of twenty (20) years after the effective date of this agreement." Thus, in order to violate either the protection or the non-compete provisions, Loftness must have disclosed or used confidential

-8-

information.  In relevant part, the NDA defines "Confidential Information" to mean "[s]uch information that [TAI] considers to be proprietary and/or confidential."

However, the terms of the contract do not specify a temporal vantage point from which to make our confidentiality inquiry.  We therefore find that the NDA is ambiguous as to whether "considers to be confidential" means that TAI had to consider the information to be confidential at the time the parties entered the NDA or whether TAI was required to consider the information to be confidential at the time of an alleged future breach.  Although the district court rightly observes that the NDA does not specify that it protects information TAI considers confidential at the time of execution of the NDA, the NDA likewise does not specify that its protections cease once the information becomes public.  We consider it reasonable that TAI would seek to prevent Loftness from using the confidential information it provided at the outset from any competitive use for twenty years, even if the parties completed the project of manufacturing and selling grain-bagging equipment to the public.  Likewise, it seems reasonable that the parties may have intended to protect TAI's confidential information only so long as it remained confidential.  We note that the NDA does not refer to termination at all, except by indicating that the agreement "shall remain binding for twenty (20) years," unless terminated "in writing signed by both parties."

Confronted with this apparent ambiguity, we turn elsewhere in the contract to determine whether the ambiguity can be resolved.  *Boe v. Christlieb*, 399 N.W.2d 131, 133 (Minn. Ct. App. 1987) ("Contracts must be construed as a whole, with the parties' intentions gathered from the entire instrument, not from isolated clauses.").  Paragraph 2 of the NDA explicitly restricts use of confidential information "for any purpose other than the Project";  however, the NDA's definition of project provides no further guidance in delineating the project's contours.  Faced with two reasonable interpretations and unable to glean the parties' intent "wholly from the writing," *Martens*, 616 N.W.2d at 751, we consider the NDA to be ambiguous as to the scope of the parties' intended protection of confidential information.  *See Boe*, 399 N.W.2d

at 133.  Accordingly, "construction then becomes a question of fact for the jury unless [extrinsic] evidence is conclusive." *Blackburn*, 366 N.W.2d at 643.

"To determine intent of the parties, the court looks at surrounding circumstances and the parties' own subsequent conduct." *Fredrich v. Indep. Sch. Dist. No. 720*, 465 N.W.2d 692, 695 (Minn. Ct. App. 1991).  "The most probative evidence is the actions of the parties afterwards." *Id.*  We first note that TAI has defined "Project" throughout this litigation as comprising the development of the sales of grain-bagging equipment.  In relation to that purpose, TAI admits in its brief, "If the Project was successfully completed, [TAI] and Loftness fully intended for [TAI]'s grain-bagging concept to be manufactured and sold to the general public." The project thus culminated in the public availability of the Loftness-built grain-bagging equipment.  This equipment, in turn, came with a a detailed owner's manual. Twiestmeyer acknowledged that this owner's manual would enable any other manufacturer, including Brandt Industries, to replicate the Loftness-built grain-bagging system—that is, the project, if successful, necessarily divulged TAI's confidential information.  Once made public in this manner, TAI concedes in its brief "that the information conveyed would no longer be 'confidential' in the traditional sense of the word."

The fact that the parties made no effort to keep TAI's confidential information confidential, however, does not convince us that the parties intended for the NDA's protections to end.  Even though the non-disclosure provision might no longer apply, the non-use provision still might have prevented Loftness from using this information for twenty years "in a[] way that could be construed as being competitive of [TAI's] business"—if the NDA is interpreted to protect information TAI considered to be confidential at the time it disclosed the information to Loftness.

Loftness offers that TAI failed to object to the disclosure or use of its confidential information between the date when Loftness disclosed the Brandt

Industries relationship and the date Loftness ceased making payments to TAI under the Override Agreement and that this delay reflects a "course of performance accepted or acquiesced in without objection" that is "relevant to determine the meaning of the agreement." *See Oskey Gasoline & Oil Co., Inc. v. OKC Refining, Inc.*, 364 F. Supp. 1137, 1143 (D. Minn. 1973) (quoting Minn. Stat. Ann. § 336.2-208 (1966)). This failure to object, Loftness continues, shows that the parties intended the NDA to protect TAI's confidential information for the twenty-year duration of the agreement or until accomplishment of the manufacture and sale of the grain-bagging equipment—whichever happened first. This evidence, however, does not conclusively refute TAI's argument that the NDA protected TAI's confidential information from Loftness's use "for its own benefit," "for any purpose other than the Project"—that is, for a use that benefitted Loftness without also benefitting TAI. Indeed, until Loftness stopped paying TAI, any use of TAI's once-confidential information for Loftness's benefit through the Brandt Industries relationship also benefitted TAI via the override payments. TAI thus reasonably might not have "construed as being competitive of [TAI]'s business" Loftness's use of TAI's confidential information while Loftness continued to make the override payments.

The district court found dispositive the NDA's lack of any provision relating to payment, observing that the parties instead chose to address TAI's compensation through the Override Agreement, an agreement we already held Loftness had not breached.[2] *Loftness I*, 742 F.3d at 853. We disagree. The NDA bans Loftness's use of TAI's confidential information "for [Loftness's] own benefit" or in a way that "could be construed as being competitive of [TAI]'s business." As mentioned above, however, so long as Loftness continued to pay TAI, TAI reasonably may have considered Loftness's use of TAI's confidential information as part of the Brandt Industries relationship to be a non-competitive use. Under this view, had Loftness

_____

[2]The district court addressed this argument in the alternative, having found TAI's use-for-its-own-benefit argument not before it, as noted above.

wished to continue to use TAI's confidential information in a potentially competitive manner, Loftness could have continued to enter into ancillary payment agreements with TAI.  Because the extrinsic evidence is not conclusive, the fact question of the parties' intent should have gone to a jury, and summary judgment was inappropriate. *See Blackburn*, 366 N.W.2d at 643.

## III.

For the reasons set forth above, we vacate the district court's grant of summary judgment for Loftness on TAI's claim for breach of the NDA and remand for further proceedings.                    _____