# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2653

_____

James Jensen; Lorie Jensen, as parents, guardians and next friends of Bradley J. Jensen and others similarly situated; James Brinker; Darren Allen, as parents, guardians and next friends of Thomas M. Allbrink and others similarly situated; Elizabeth Jacobs, as parent, guardian and next friend of Jason R. Jacobs and others similarly situated

*Plaintiffs - Appellees*

v.

Minnesota Department of Human Services, an agency of the State of Minnesota

*Defendant - Appellant*

Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually, and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually, and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota

*Defendants*

State of Minnesota

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2018
Filed: July 26, 2018

_____

Before WOLLMAN, ARNOLD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

The Minnesota Department of Human Services (MDHS) appeals from a post-judgment order of the district court[1] concluding that the court retained jurisdiction to enforce the stipulated class action settlement agreement (Agreement) MDHS entered into with plaintiffs (collectively, the Jensen class). The Jensen class defends the district court's order but also asserts that we lack jurisdiction over the case because the order appealed is not final as required by 28 U.S.C. § 1291.

**I.**

On July 10, 2009, the Jensen class—civilly committed individuals, their next friends, and others similarly situated—filed suit in federal district court in Minnesota. Their claims were based on "the abusive, inhumane, cruel and improper use of seclusion and mechanical restraints routinely imposed upon patients of the Minnesota Extended Treatment Options program (METO)." METO was an in-patient facility designed to provide residential treatment and care for persons with developmental disabilities who posed a risk to public safety.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

On December 5, 2011, the district court approved the Agreement proposed by the parties. Under the Agreement's terms, METO closed and was replaced by successor facilities that were intended to provide the same services to the same population that METO had served. These facilities are also governed by the Agreement. Pursuant to the terms of the Agreement, a judgment of dismissal was entered and the district court retained jurisdiction to enforce the Agreement:

> The Court shall retain jurisdiction over this matter for two (2) years from its approval of this Agreement for the purposes of receiving reports and information required by this Agreement, or resolving disputes between the parties to this Agreement, or as the Court deems just and equitable. Should Plaintiffs believe a pattern and practice of substantial non-compliance . . . exists, the State and Plaintiffs shall meet and confer in an effort to resolve any such concerns. The meet and confer shall be held no later than sixty (60) days prior to the two year anniversary of the Court's approval. Should Plaintiffs continue to believe a pattern and practice of substantial non-compliance . . . exists, Plaintiffs may, within thirty (30) days thereafter, file a motion with the Court to extend the reporting requirements to the Court under this Agreement for an additional one (1) year.

The parties agreed that the Agreement would "terminate at the same time as the [district] court's jurisdiction ends," with some limited exceptions that are not at issue here.

On August 27, 2013, the district court, with the consent of the parties, entered an order extending its jurisdiction for an additional year beyond the original termination date (until December 4, 2014). The district court stated that it "expressly reserve[d] the authority and jurisdiction to order an additional extension of jurisdiction, depending upon the status of compliance by the Defendants with the

-3-

specific provisions of the Settlement Agreement, absent stipulation of the parties."[2] Neither party objected to the extension of jurisdiction or the court's reservation of authority.

About a year later, on September 3, 2014, MDHS was still not in compliance. The district court determined that it could "no longer tolerate continued delay in the implementation of the Settlement Agreement" and that "[a]dherence to the Court's Orders by the [M]DHS officials and staff at all levels [wa]s essential, not discretionary." The court then extended jurisdiction for another two years (until December 4, 2016) "based on the significant delays in implementation as well as the non-compliance with the Settlement Agreement." It further noted that "the extension of jurisdiction may be considered a sanction related to the circumstances described in [its] Order." Neither party objected.

Litigation proceeded for another year and a half. On February 22, 2016—after mediation conducted by Magistrate Judge Becky R. Thorson was concluded—the district court established a "schedule for compliance reporting." In its order, the court extended its jurisdiction for three more years (until December 4, 2019). The district court also "expressly reserve[d] the authority and jurisdiction to order an additional extension of jurisdiction, depending upon the status of Defendants' compliance and absent stipulation of the parties." Again, neither party objected.

At a March 24, 2017, status conference, MDHS for the first time raised an objection to the district court's continuing jurisdiction. According to MDHS, the

_____

[2]In this order, the district court also noted that it was "extremely concerned with the lack of progress" in "carrying out" the intent of the Agreement, and expressed the view that individuals with developmental disabilities and their families would lose faith in the court and the government if the parties did not comply with the Agreement's terms and provisions.

-4-

court's jurisdiction had ceased as of December 4, 2014.[3] The parties briefed the issue, and, on June 28, 2017, the district court entered an order concluding it retained jurisdiction. The district court found that the jurisdictional provision in the Agreement was ambiguous, but looked to extrinsic evidence to conclude that the parties intended to grant the court jurisdiction for as long as it deemed "just and equitable." MDHS timely appeals the district court's ruling.

## II.

Before addressing the merits of MDHS's argument, we must first consider the Jensen class's argument that this court lacks appellate jurisdiction. In general, courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291; Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106 (2009). "A final decision is typically one by which a district court disassociates itself from a case." Mohawk Indus., 558 U.S. at 106 (cleaned up); United States v. Haynes, 793 F.3d 901, 902 (8th Cir. 2015) ("A decision is not final, ordinarily, unless it ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment." (quotation omitted)). However, the Supreme Court and our own cases both instruct that this language is to be given "a 'practical rather than a technical construction.'" Mohawk Indus., 558 U.S. at 106 (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)); Miller v. Alamo, 975 F.2d 547, 549 (8th Cir. 1992); see also Alpine Glass, Inc. v. Country Mut. Ins. Co., 686 F.3d 874, 877 (8th Cir. 2012). We have also noted that this "practical" application is particularly appropriate in cases involving post-judgment orders. This is because "there is little danger that prompt appeal of post-judgment matters will cause confusion, duplicative effort, or otherwise interfere with the trial court's

---

[3]MDHS arrived at this date—three years (minus one day) from the date on which the district court initially approved the Agreement—by adding together the initial two-year time frame and the one-year extension that it concedes was permissible under the Agreement.

disposition of the underlying merits," and "further proceedings are not likely to produce an order that is any more final than the one at issue." Miller, 975 F.2d at 550.

Under the collateral order doctrine—"[b]est understood as a practical construction of the final judgment rule," Alpine Glass, 686 F.3d at 877 (cleaned up)—collateral orders that "do not end the litigation" may still be considered "final" if three conditions are met. These conditions are: (1) the decision is "conclusive"; (2) the decision "resolve[s] important questions separate from the merits"; and (3) the decision would otherwise be "effectively unreviewable." Mohawk Indus., 558 U.S. at 106; Alpine Glass, 686 F.3d at 877. All three conditions are met in this case. The district court reached a firm conclusion regarding the meaning of the jurisdictional provision in the Agreement; this issue is entirely separate and apart from the merits of the underlying litigation; and there is likely to be no further occasion for this court to address the question. We conclude that jurisdiction in this court is proper under § 1291.

### III.

The parties agree that interpretation of the Agreement is governed by Minnesota law regarding contract interpretation. See Loftness Specialized Farm Equip., Inc. v. Tweistmeyer, 818 F.3d 356, 360 (8th Cir. 2016). "Under Minnesota law, 'the primary goal of contract interpretation is to determine and enforce the intent of the parties.'" Id. at 361 (quoting Motorsports Racing Plus, Inc. v. Arctic Cat Sales Inc., 666 N.W.2d 320, 323 (Minn. 2003)). "Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." Id. (quoting Motorsports Racing, 66 N.W.2d at 323). However, if a contract is "*reasonably* susceptible to more than one construction" it is ambiguous, and "construction becomes a question of fact unless extrinsic evidence is conclusive." Id. (quotations omitted).

*a. Contractual Ambiguity*

"Whether the terms of a contract are ambiguous is a question of law, to be determined by the court," id. (quoting <u>Blackburn, Nickels & Smith, Inc. v. Erickson</u>, 366 N.W.2d 640, 643 (Minn. Ct. App. 1985)), and our review of the district court's ruling is de novo, <u>Swift & Co. v. Elias Farms, Inc.</u>, 539 F.3d 849, 851 (8th Cir. 2008). Under Minnesota law, a contract is ambiguous if "the language used is reasonably susceptible of more than one meaning." <u>Id.</u> (quoting <u>Blattner v. Forster</u>, 322 N.W.2d 319, 321 (Minn. 1982)). We must therefore turn to the language of the Agreement.

The relevant jurisdictional provision in the Agreement reads: "The Court shall retain jurisdiction over this matter for two (2) years from its approval of this Agreement for the purposes of receiving reports and information required by this Agreement, or resolving disputes between the parties to this Agreement, or as the Court deems just and equitable." MDHS reads the provision to provide jurisdiction over the "matter" for two years for three distinct purposes that are separated by commas. The Jensen class, on the other hand, reads the provision to provide jurisdiction over the "matter" for two years for two explicit purposes, while also allowing the district court to retain jurisdiction "as [it] deems just and equitable." For clarity, we display these two interpretations visually:

| MDHS's Interpretation | The Jensen class's Interpretation |
|---|---|
| The Court shall retain jurisdiction over this matter for two (2) years from its approval of this Agreement for the purposes of<br>• receiving reports and information required by this Agreement, or<br>• resolving disputes between the parties to this agreement, or<br>• as the Court deems just and equitable. | The Court shall retain jurisdiction over this matter<br>• for two (2) years from its approval of this Agreement for the purposes of<br>  ○ receiving reports and information required by this Agreement, or<br>  ○ resolving disputed between the parties to this Agreement, or<br>• as the Court deems just and equitable. |

Both parties argue this provision unambiguously reflects their interpretation. MDHS relies largely on the placement of commas to conclude that the court "shall retain jurisdiction" for only two years. The word "or" is preceded by a comma in both uses. MDHS says this indicates that the commas separate items in a list, because commas are typically not used before the word "or" when separating only two items. Had the parties intended the interpretation the Jensen class advocates, they would have used a colon or semi-colon. MDHS also asserts that the subsequent language—which provides a specific method for extending the court's jurisdiction for one year at the Jensen class's request—supports its reading. Otherwise, MDHS claims, this language is superfluous.[4]

The Jensen class bases its interpretation on the use of the words "receiving" and "resolving" to link the two purposes for which the district court had jurisdiction

---

[4]MDHS argues that the "series-qualifier" canon which requires that a term be presumed to modify the entire series that it follows or precedes supports their position. However, this reasoning is circular, as this canon only applies if the sentence indeed includes a "series" of more than two elements in the first place.

for the initial two-year period.  The subsequent portion of the sentence—"or as the Court deems just and equitable"—in contrast, does not begin with a gerund and thus cannot be one of the "purposes" subject to the two-year limit.  See O'Connor v. Oakhurst Dairy, 851 F.3d 69, 74 (1st Cir. 2017).  To assert otherwise is to say that the court had jurisdiction "for the purpose[] of . . . as the Court deems just and equitable," a nonsensical grammatical construction.  Had the parties intended the interpretation that MDHS advocates, they would have used a third gerund, such as "acting," before the phrase "as the Court deems just and equitable."  The Jensen class also asserts that given the complex nature of the parties' obligations under the Agreement, inclusion of a specific procedure for extending jurisdiction for one additional year, as well as a fall-back clause for the court to retain jurisdiction as it deems "just and equitable," was a logical choice.[5]

Both parties' readings are reasonable—but imperfect—interpretations of the jurisdictional provision.  And as the district court stated, "neither party's interpretation makes complete grammatical sense."  In short, we agree with the district court that the jurisdictional provision in the Agreement is reasonably susceptible to more than one reading; it is ambiguous.

### b.  Extrinsic Evidence

Once a court concludes that a contract is ambiguous, "construction then becomes a question of fact . . . unless extrinsic evidence is conclusive" as to the intent of the parties.  Loftness, 818 F.3d at 362 (brackets omitted) (quoting Blackburn, 366

---

[5]The Jensen class—citing various grammatical precedents—also argues that the use of the "disjunctive or" supports their reading, because a disjunctive list would normally only have one "or," rather than an "or" preceding each item.  However, it is not uncommon for a list to use conjunctions or disjunctions between each item (or no conjunctions at all), and it is therefore just as plausible that the disjunctive is used in parallel, as MDHS asserts. Cf. O'Connor, 851 F.3d at 73–76.

N.W.2d at 643). "To determine the intent of the parties, the court looks at surrounding circumstances and the parties' own subsequent conduct." Id. (quoting Fredrich v. Indep. Sch. Dist. No. 720, 465 N.W.2d 692, 695 (Minn. Ct. App. 1991)). "The most probative evidence is the actions of the parties afterwards." Id. (quoting Fredrich, 465 N.W.2d at 695). Indeed, under Minnesota law, "the interpretation the parties themselves place on the contract is entitled to great, perhaps controlling, weight in ascertaining the terms of the contract." Fredrich, 465 N.W.2d at 696.

Both parties have proceeded—both before and after December 4, 2014—as though the district court has properly retained jurisdiction. The district court extended its jurisdiction three times, and neither party objected. Nor did either party object to the district court's orders expressly reserving the authority to extend its jurisdiction again. Indeed, in 2015 and 2016—after the date that MDHS now asserts jurisdiction ceased—the parties filed reports and letters with the court, and responded to the reports filed by the Court Monitor. And, also during that time, MDHS filed a motion seeking "an order granting relief from a particular provision in the Stipulated Class Action Settlement." The next day, the Jensen class filed a memorandum in opposition to that motion. In none of these filings did either party question the court's jurisdiction to grant or deny the relief sought, or to monitor compliance with the terms of the Agreement. Not until more than two years after it now claims jurisdiction ceased did MDHS express any objection to the district court's continued jurisdiction.

In addition, the attorney for the Jensen class—who originally negotiated the Agreement—submitted a sworn affidavit. He stated that, at the time of negotiation, he understood that the jurisdictional provision allowed the district court to retain jurisdiction in the event of non-compliance or delay on the part of MDHS. We recognize that this evidence only serves to show the understanding of one party at the time of contracting, but it supports the reasonable inference—drawn from the

-10-

repeated conduct of the parties—that all sides understood the district court to have the authority to extend its jurisdiction as it deemed "just and equitable."

MDHS presents no alternative extrinsic evidence to support its reading of the agreement. MDHS points only to the district court's July 17, 2012, Order, arguing that there, the district court adopted its interpretation. But a fair reading of the district court's language in this order is that it was merely reciting the language of the Agreement—language that is only now in dispute. To the extent this order is extrinsic evidence, it fails to support MDHS's interpretation.

MDHS makes two other arguments unrelated to the principles of contract interpretation already discussed. First—observing that Minnesota law rejects constructions of ambiguous contract provisions that would lead to an "absurd result," see Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., 825 N.W.2d 695, 705 (Minn. 2013) (quoting Emp'rs Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn., 165 N.W. 554, 556 (Minn. 1969))—MDHS asserts that it "would not have reasonably agreed to terms under which the district court could extend its jurisdiction . . . indefinitely" and that such an interpretation is therefore absurd. We see no reason why this is so. MDHS identifies no evidence indicating that it would not be reasonable for the parties to agree to a preliminary time frame for the court's jurisdiction while, at the same time, including a fail-safe provision that allowed flexibility if compliance with the Agreement took longer than originally expected.[6]

Second, MDHS argues that the Jensen class's interpretation of the contract violates separation of powers and presents significant federalism concerns because

---

[6]And, we note, MDHS's interpretation would mean that the Jensen class entered a settlement agreement that dismissed their claims against MDHS with prejudice, yet placed no obligation on MDHS to comply with the terms of the Agreement beyond the initial two-year term—a result that the Jensen class might find absurd.

the district court has "confer[red] upon itself and its court monitor a micro managerial role over a substantial portion of DHS." However, these arguments—whatever their underlying merit—are misplaced because the question before us on appeal is purely jurisdictional. We are not asked to examine the role that the district court has played in the post-judgment enforcement of the Agreement, nor are we tasked with interpreting any provision of the Agreement other than the jurisdictional one. If MDHS believes that the district court is exercising authority in excess of what the Agreement grants, it remains free to raise such challenges during the ongoing litigation below. However, such concerns have no bearing on our interpretation of the provision articulating the duration for which the district court retains jurisdiction.

## IV.

We conclude that, while the jurisdictional provision of the Agreement is ambiguous on its face, the extrinsic evidence shows that this provision permits the district court to extend its jurisdiction as it "deems just and equitable." We affirm.

_____