# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-2365

_____

Stetson Skender, Individually and on Behalf of All Others Similarly Situated

*Plaintiff - Appellee*

v.

Eden Isle Corporation; Gary Redd

*Defendants - Appellants*

_____

No. 21-2556

_____

Stetson Skender, Individually and on Behalf of All Others Similarly Situated

*Plaintiff - Appellant*

v.

Eden Isle Corporation; Gary Redd

*Defendants - Appellees*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: April 12, 2022
Filed: May 4, 2022
_____

Before LOKEN, ARNOLD, and KOBES, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Soon after Eden Isle Corporation terminated Stetson Skender's employment, he sued Eden Isle and its president, Gary Redd, claiming that they had failed to pay him overtime wages, in violation of the Fair Labor Standards Act and the Arkansas Minimum Wage Act. *See* 29 U.S.C. § 207(a)(1); Ark. Code Ann. § 11-4-211(a). The district court[1] ultimately entered an order granting summary judgment to the defendants on the ground that Skender did not support his allegations with sufficient evidence. Mere minutes after the court entered its order, but before the clerk had entered a separate judgment dismissing Skender's claims, *see* Fed. R. Civ. P. 58(b)(1)(C), Skender filed a notice stating that he had accepted an offer of judgment that the defendants had extended him six days earlier, *see* Fed. R. Civ. P. 68, in which they agreed to pay him four thousand dollars plus costs and reasonable attorneys' fees. He maintained that, under Rule 68(a), he could accept the offer anytime up to fourteen days after the defendants had served him with it, and therefore it had survived the court's grant of summary judgment. The clerk nevertheless entered judgment consistent with the summary-judgment order.

Skender moved the court to amend the judgment to reflect the terms in the offer of judgment. The district court, relying on *Perkins v. U.S. W. Commc'ns*, 138 F.3d 336, 339 (8th Cir. 1998), granted Skender's motion, and the clerk entered a new

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

judgment. The defendants appeal, maintaining that the judgment should have reflected the court's summary-judgment ruling rather than the offer of judgment. Skender, meanwhile, cross appeals from the court's order denying a post-judgment motion for recusal and from the court's order granting him only one dollar in attorneys' fees. We affirm.

We begin with the defendants' appeal from the court's amendment of the judgment to reflect the terms in the offer of judgment. In *Perkins*, as here, a party accepted an offer of judgment after the district court had entered an order granting summary judgment for the opposing party, and the offeror did not condition its offer on the outcome of a pending summary-judgment motion. 138 F.3d at 337–39. Finding nothing in the text of the governing rules to suggest that the offer would automatically terminate on the grant of summary judgment, we held that the offer remained open for the time prescribed in Rule 68 "despite an intervening grant of summary judgment by the district court." *Id.* at 339–40.

As the district court recognized, our opinion in *Perkins* controls the outcome of the defendants' appeal. Because only our en banc court may overrule a prior panel's decision, we can't grant the defendants' requested relief. *See United States v. Escobar*, 970 F.3d 1022, 1026 (8th Cir. 2020).

We now turn our attention to Skender's cross appeal, the latest episode in an ongoing and protracted dispute between the district court and Skender's counsel, the Sanford Law Firm, PLLC (SLF). *See, e.g.*, *Oden v. Shane Smith Enters., Inc.*, 27 F.4th 631 (8th Cir. 2022). After the court amended its judgment, Skender moved the court to recuse, arguing that the "Court has entered orders and taken other actions in other cases . . . that would lead a reasonable person to question the impartiality of this Court with respect to" SLF and attorney Josh Sanford. It asked the clerk to reassign the case to another judge "for purposes of ruling on Plaintiff's Motion for Costs and

Attorneys' Fees, filed concurrently herewith." The district court denied the motion in a brief order the same day.

The defendants assert that we lack jurisdiction to consider Skender's challenge to the court's recusal order because his notice of appeal was untimely. Federal law generally requires a party to file a notice of appeal within thirty days after the court enters the order being challenged on appeal. *See* 28 U.S.C. § 2107(a); *see also* Fed. R. App. P. 4(a)(1)(A). The Supreme "Court has long held that the taking of an appeal within the prescribed time is mandatory and jurisdictional." *Bowles v. Russell*, 551 U.S. 205, 209 (2007). Skender filed his notice of appeal 36 days after the court entered its order denying recusal, identifying two orders that Skender wished to challenge: the recusal order and the court's order awarding him only one dollar in attorneys' fees—an order that the court entered earlier on the same day that Skender filed his notice of appeal.

Absent certain exceptions not relevant here, our court has "jurisdiction of appeals from all final decisions of the district courts" within our circuit. *See* 28 U.S.C. §§ 1291, 1294(1). "Restricting appellate review to 'final decisions' prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974). In many cases, final decisions are easy to identify, but the border between a final decision and a non-final decision can be "elusive" and "often difficult to ascertain." *See Miller v. Alamo*, 975 F.2d 547, 549 (8th Cir. 1992). When determining whether an order is final, we undertake a practical, rather than technical, evaluation of the circumstances, including a consideration of "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Id.*

At oral argument counsel for Skender explained that he did not appeal the recusal order sooner because he believed the order was not final and appealable. It is

true that we have held that orders denying a motion to recuse are not final, appealable orders. *See, e.g.*, *United States v. Brakke*, 813 F.2d 912, 913 (8th Cir. 1987) (per curiam); *Scarrella v. Midwest Fed. Sav. & Loan*, 536 F.2d 1207, 1210 (8th Cir. 1976) (per curiam). The typically clear legal waters are murkier here, though, because the court entered the order denying recusal after it had entered a final judgment on the merits of the case. Orders entered post-judgment are typically more amenable to immediate appeal because, for one thing, "there is little danger that prompt appeal of post-judgment matters will cause confusion, duplicative effort, or otherwise interfere with the trial court's disposition of the underlying merits," and for another, "further proceedings are not likely to produce an order that is any more final than the one at issue." *See Jensen v. Minn. Dep't of Human Servs.*, 897 F.3d 908, 912 (8th Cir. 2018). In the one case we've found from a circuit court involving the finality of a post-judgment order denying recusal, the court held that the order was final and appealable. *See United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 183 (2d Cir. 1991) (per curiam).

But viewing the current circumstances from a practical perspective, which is particularly appropriate when determining whether a post-judgment order is final, *see Jensen*, 897 F.3d at 912, we hold in this case that Skender's notice of appeal was timely as to the order denying recusal because that order was not yet final and appealable. First, unlike an appeal from most post-judgment orders, an immediate appeal here might have interfered with proceedings before the district court. At the time of the court's order denying recusal, the court had pending before it a motion for an award of costs and attorneys' fees—a motion to which Skender's recusal motion was expressly tethered. So a notice of appeal filed while the court was considering that related motion could arguably have divested the district court of jurisdiction to decide it, *see Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam), and thus prevented the court from resolving it until our court resolved the appeal of the recusal order. Second, further proceedings would likely produce an order that was more final than the order denying recusal. The resolution of the motion

for attorneys' fees provided a natural terminus after which we could review the fee order and the related, prefatory recusal order.

We do not intend to intimate that no post-judgment recusal orders are final and appealable. Some post-judgment recusal orders, like the one at issue in *Yonkers*, may respond to recusal motions that do not identify some other motion or proceedings for which recusal is sought and that would soon be resolved. In that circumstance there may be no other court order that would provide a worthwhile or sensible opportunity to review the court's recusal decision. A party should not be able to revive a lost opportunity to appeal after each and every subsequent post-trial order. *See* 15B Edward H. Cooper, Federal Practice & Procedure § 3916 (2d ed. April 2022 update). But here the recusal motion was expressly connected to a specific motion filed the same day whose resolution could be expected in short order. In these circumstances, we think it more practical to review the orders resolving these motions in one fell swoop after the court has decided both of them.

Assured of our jurisdiction, we must now decide whether the district court abused its discretion in denying Skender's motion to recuse. *See Oden*, 27 F.4th at 633. Skender maintains that the district court applied the wrong standard for handling motions to recuse. He argues, "Rather than evaluating whether a reasonable person would perceive bias or prejudice, the District Court merely stated that the bias did not exist and summarily denied the Motion for Recusal." He then provides a detailed history of the recent interactions between the district court and SLF that he says demonstrates that a person might reasonably question the district court's impartiality.

The difficulty for Skender is that just two months ago in *Oden* we upheld a virtually identical order from this very district judge. *See id.* Not only was the district court's order in *Oden* practically identical to the one here, but SLF made essentially the same arguments there as it does here (many are verbatim replicas), so we see no way to distinguish the challenge in *Oden* from the challenge here. Nor has anything

occurred in the two months since we decided *Oden* to convince us that the district court's decision, acceptable two months ago, now amounts to an abuse of discretion.

We next consider Skender's challenge to the court's decision to award only one dollar in attorneys' fees. "We review an award of attorneys' fees for an abuse of discretion." *See Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021). The FLSA states that when an employer violates certain parts of the statute, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The AMWA similarly says that a plaintiff seeking unpaid overtime compensation may receive "[c]osts and such reasonable attorney's fees as may be allowed by the court." *See* Ark. Code Ann. § 11-4-218(a)(1)(B)(ii). In his motion, Skender explained that he had incurred almost $41,000 in attorneys' fees but, after striking potentially questionable charges from reimbursement, he requested that the court award him $30,681.70.

Our court held in another case involving SLF and the district court that, in determining a reasonable fee, the court must begin by calculating the lodestar, "which multiplies the number of hours worked by the prevailing hourly rate." *See Vines*, 9 F.4th at 855–56. In doing so the court may exclude hours that were not reasonably expended, *see id.* at 855, and it may reduce unreasonable hourly rates. *See Burton v. Nilkanth Pizza Inc.*, 20 F.4th 428, 431 (8th Cir. 2021). The court may also reduce the lodestar if, for example, the plaintiff does not obtain all the relief sought or if the court detects unprofessional conduct on the part of counsel. *See Vines*, 9 F.4th at 855, 857–58.

The district court properly began by calculating the lodestar, and it did so in a detailed and scrupulous manner. As for the attorneys' claimed hourly rates, the court noted that Josh Sanford's claimed rate of $383 per hour exceeded the rate he had claimed in other recent cases that many courts had rejected. It also pointed out that

nine other SLF attorneys had requested rates exceeding ones they had requested in other recent cases, and the court deemed the increases "to be entirely arbitrary and unreliable." It observed as well that Sanford had shown a lack of candor when arguing in support of the claimed rates, most notably by failing to mention the cases "where his $300+ hourly rate was rejected and reduced." The court therefore reduced the hourly rates.

Turning to the number of hours reasonably expended, the court pointed out that at least nine other federal district courts in Arkansas and Texas had observed that SLF's "collaborative approach" to case management led to overbilling. Here, the court noted, there were thirteen timekeepers, ten of whom were attorneys. The court then proceeded to reduce the claimed amount bit by bit for a litany of reasons. In sum, the court concluded, "All of the mentioned billing issues (as well as some mentioned in Defendants' response that are not discussed in this Order . . .) result in a fee petition that is excessive and unreliable." The court explained that the lodestar amount, after reducing it based on the degree of Skender's success, totaled only $648.10. But, the court held, even that amount was "not fair, proper, or just under the circumstances," especially since Skender narrowly escaped walking away with nothing at all. So the court awarded one dollar in attorneys' fees, which, the court averred, "is still more than [SLF] would have received had there not been an outstanding offer of judgment."

Skender asserts that the district court "impermissibly altered" the parties' offer of judgment by awarding only one dollar. We disagree. The offer of judgment states merely that the defendants would pay "plaintiff's counsel an award of reasonable attorneys' fees and costs now accrued within the meaning of Rule 68 to be determined by the Court on a properly supported motion." The plain language of the offer left it to the district court to determine a reasonable fee, which the court did. This isn't altering the agreement; it is giving it effect.

Skender also peppers the court's lodestar calculation with a variety of challenges, arguing essentially that the court excised too many recoverable fees from its calculation. We fail to see the relevance of Skender's challenges because the court did not award a fee based on the lodestar. Even Skender acknowledges that the court "ignored" and "abandoned" its lodestar calculation. The district court concluded that its lodestar calculation of $648.10 resulted in an unreasonably high fee in the circumstances. If it had decided on a higher lodestar amount, as Skender suggests it should have, then, a fortiori, the court would have considered that higher amount to be too high as well. Though we have held that a court must calculate the lodestar, *see Vines*, 9 F.4th at 856, we've not held that a court must deem the lodestar amount reasonable and then award it.

Finally, Skender disputes that an award of one dollar was reasonable. As we've said before, "[t]he trial court knows the case best. It knows what the lawyers have done, and how well they have done it. It knows what these efforts are worth." *See Young v. City of Little Rock*, 249 F.3d 730, 737 (8th Cir. 2001). Further, "It is well within the district court's broad discretion in reviewing a request for fees to consider not only the amount of the fees, but also the party's unprofessional conduct in the case." *See Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012). Courts possess certain inherent powers to manage their affairs and ensure that cases are disposed of in an orderly manner. *See id.* These powers "include the ability to supervise and discipline attorneys who appear before it and discretion to fashion an appropriate sanction for conduct which abuses the judicial process, including assessing attorney fees." *Id.*

The district court explained that the requested pay rates of SLF attorneys and staff were inflated arbitrarily and without reason, despite numerous other courts criticizing their claims to even lower rates. It pointed out, moreover, that SLF had shown a lack of candor in seeking to justify the inflated rates. As for the recoverable hours claimed, the court identified a considerable number of other courts that have

chastised SLF for overstaffing cases and then trying to get defendants to pay for its inefficiencies. We acknowledged as much just a few months ago in the context of stating that SLF had "routinely abused" the FLSA's attorneys'-fee provision. *See Oden*, 27 F.4th at 632. Finally, the court noted that Skender's claim was unsupported by any evidence other than his own unsubstantiated testimony.

In these circumstances, we do not think the district court abused its discretion in awarding only one dollar in fees. SLF continues to submit excessive fee requests despite warnings from several courts. We've observed that, "[w]hen a party submits a fee petition, it is not the opening bid in the quest for an award. Rather, it is the duty of the requesting party to make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 634. As one of our sister circuits has said, if the court "were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *See Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980). We do not fault the district court for trying to discourage excessive fee requests by penalizing those who repeatedly make them.

We want to emphasize that, despite Skender's contention, we do not think the district court reduced Skender's fee award as a protest against our decision in *Perkins*. It would admittedly be improper for a court to reduce an award simply because it disagreed with a decision of ours that favored the party requesting fees. But while the district court in its order amending the judgment expressed some disagreement with *Perkins*, we discern no connection between its disagreement and the fees it awarded. The court merely pointed out that Skender very nearly walked away without any recovery (and thus no attorneys' fees), as the court had already entered a summary-judgment order that determined his claims to be baseless. But thanks to *Perkins* he was able to take advantage of an open offer of judgment and net what the court

-10-

characterized as a "paltry" recovery. We read the district court as saying that, even if Skender was technically a prevailing party, that doesn't mean that he should be entitled to a windfall of attorneys' fees on what amounted to borderline frivolous claims, especially considering the conduct of his attorneys.

Affirmed.

_____